(No. 34678.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellant, *vs.* THEODORE ANASTOPLO *et al.*, Appellees.

*Opinion filed June 20, 1958.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, THEODORE G. MAHERAS, RAYMOND S. SARNOW, A. ZOLA GROVES, and KENNETH POWLESS, of counsel,) for appellants.

AUGUST L. FOWLER, and R. W. HARRIS, both of Marion, for certain appellees, and I. K. LEVY, and WILLIAM M. WOLFF, both of Murphysboro, for other appellees.

Mr. Justice Hershey delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Williamson County entered upon the verdict of a jury in a condemnation proceeding. The cause was instituted by a petition for condemnation filed by the Department of Public Works and Buildings of the State of Illinois, seeking to obtain the fee interest in certain property for purposes of a highway improvement. Certain of the defendants named in the petition filed cross petitions for damages to land not actually taken but adjacent to the land taken.

Upon issue joined, the matter was tried before a jury and this appeal is from the judgment of the court entered upon the verdicts of the jury. This court has jurisdiction upon appeal in that the case is one in which the State has a monetary interest and freeholds are involved.

Four parcels of land are involved in this proceeding. In one, referred to as tract 4, the entire fee interest was subject to condemnation. As to tract 1, .039 acres was to be taken in fee, together with .061 acres of tract 2 and .08 acres of tract 3. The latter three tracts are involved in the cross petitions to fix damages to the property not taken. Tract 1 is improved with a cafe and a motel. Tract 2 is improved with a motel, and tract 3 with a service station. Tract 4 is vacant land. Each tract now fronts on State Route No. 13 in Williamson County, at or near the intersection with State Aid Route 10, or Division Street. This intersection, known as "Carterville Crossroads," is about one mile from the Carterville business district.

The .039 acres of tract 1 to be taken is a strip 20 feet wide at the west end and 28 feet wide at the east end, across the 70-foot frontage. Direct access to Route 13 would be eliminated and in lieu thereof an access or frontage road would be provided.

The .061 acres of tract 2 to be taken is a strip 20 feet wide off the 140-foot frontage and again direct access to

the highway that presently exists would be eliminated and access to the remaining parcel of tract 2 would be by the frontage road. The .08 acres of tract 3 is a strip 20 feet wide aross the 150-foot frontage plus an irregular parcel near the southwest corner of the tract, and the access to the highway for the remaining parcel of tract 3 would, as in the case of tracts 1 and 2, be by the frontage road.

The present Route 13 is a two-lane east and west highway. The improvement contemplated at the location of the property here involved would be the construction of two two-lane highways separated by an earthen strip. The north lane will carry west-bound traffic and east-bound traffic would be serviced by the south lane. The only connection between the two lanes would be a crossover some 750 feet west of tract 1 and 250 feet west of tract 3

The verdict of the jury awarded damages in each instance within the range of the testimony, except as to tract 3, wherein the award was $500 in excess of the high appraisal. A remittitur in that amount was filed by the owners of that tract.

The initial contention of the Department of Public Works and Buildings on appeal that the verdict was not within the range of the testimony was expressly waived at the time of the argument in this court and is not now relied upon in this appeal.

The State seeks to set aside the judgment and to obtain a new trial and in support thereof urges that the trial court permitted prejudicial and inflammatory argument by counsel for certain defendants and excluded admissible evidence. Complaint is also made of the trial court rulings on instructions.

The trial of this case involved the testimony of some 26 witnesses, several of whom were recalled on one or more occasions. The jury, at the inception of the trial, had an opportunity to view the premises. The testimony of most

of the witnesses was, of course, concerned with fixing values of the land taken and expressing opinions as to the damages to the land not taken and, in this connection, it would appear that the jury in this proceeding was given more than the usual variety of opinion.

For instance, the low figure in the testimony as to the value of the land taken from tract 1 was $245 and the high figure was $7,000. The low figure on damages to the remaining property of this tract not taken was $1,200 and the high figure on this element was $41,500. The verdict of the jury as to this tract was $5,000 for the land taken and $24,000 for damages to the property not taken.

The State produced six witnesses for purposes of testimony on the question of value and damages. Five were local to the area and one was a motel owner currently operating a motel south of the city of Springfield.

During the cross-examination of these witnesses it was developed that they were paid by the State for their services as appraisers in this proceeding and in several instances it was shown that the State had repeatedly used the services of the witnesses as appraisers in other proceedings wherein the Department of Public Works and Buildings was engaged in condemnation for highway right-of-way purposes. One witness testified to having made "about 100 appraisals" and stated that his fee for appraising all of the property, including the property involved in this proceedings at this crossroad, was $750. The cross-examination further developed that one of the witnesses was not engaged in the buying and selling of real estate but, rather, his function in the real-estate business was a sideline and that his services in this connection were almost exclusively as an appraiser in proceedings such as the instant proceeding.

After this material was developed upon cross-examination, counsel for one of the defendants in his closing argument to the jury characterized the witnesses for the State

as "State· payrollers" afflicted with a disease or virus that affects their eyesight and vision, which disease is called "pay-check anastigmatism."

The entire closing argument of counsel for this defendant is not set forth in the abstract nor in the record. The record contains only a short excerpt from the argument, and the argument thus included in the record is as follows: "Argument of Mr. Wolff:

"* * * Now I told you this is the first time I've ever tried a law suit in the Circuit Court of Williamson County, but this is not the first condemnation suit I've tried against some branch of the State of Illinois. I've tried a lot of them and the picture and characterization of those State witnesses is just the same in this one as in every other one I've ever had experience with. I'm not saying that these men are vicious; I'm not saying that these men are evil. I tell you that these men have been stricken with a disease sorta, and these diseases are a kind of virtue.

"It starts when the agency of the State first hires them. That's the virus. And the first thing they do, they kinda blink their eyes, and gulp, and swallow, and when they swallow, they swallow all their reason and understanding. The second thing this virus attacks, is what I call their motor sensory nerves. Those are the nerves that affect balance, and when it affects those nerves, they always start leaning, and leaning, and leaning, and they get to leaning at about a 45 degree angle in favor of the State. And the third stage of this, for all of you will remember the old saying: 'There is none as blind as those who will not see.' The third stage affects their eyesight and vision, and the disease gets its name from that stage. It is called 'pay-check anastigmatism.' These men don't have clear vision about this. These men who have worked for nothing but the State, they can't—

"By Mr. Powless: 'I object, there is no such thing as that in the evidence.'

"By Mr. Wolff: 'Well, it's my comment.'

"Reporter's note: 'No ruling by the court.'

"By Mr. Wolff: 'These men can't be expected to come in here and give you open and fair appraisals.'

"* * * Now I want to talk a little in general about the witnesses that the State called here. Now Kenney [Mr. Powless] started out in an apologetic form, and I don't much blame him, because if they were my boys, I would have to apologize a little bit for them. There will be an instruction given here by this court, that if you believe that any witness because of interest, has minimized or exaggerated damages, you can disregard the testimony of that witness. Now do you think they are interested? There are five of the old regulars—five of the old regulars they called here. They called six altogether, but five of them were old regulars. One of them says he has appraised a hundred tracts in the last two years. Now that's pretty steady work. Another one gave you an idea of what these appraisals pay them. He said for this area out there, I was paid $750.00 for my appraisals. Now that didn't include what he is being paid for staying in court and testifying, that's just for making his appraisal. And so, ladies and gentlemen, if you mesh those things together, you come to the unalterable conclusion that these people are just on the State payroll, and if they are—

"By Mr. Powless: 'I object, that's vicious.'

"Reporter's note: 'No ruling by the court.'

* * * they are not the distinterested witnesses that they would have you believe."

It is apparent from a reading of that portion of the final argument above set forth that counsel for the defendant was making the strongest possible attack upon the witnesses produced on behalf of the State, but a careful analysis of this argument, though highly uncomplimentary to the State's witnesses, indicates to us that he is contending that the witnesses for the State minimized values and

damages and that a factor in so doing was the compensation paid the appraisers by the State. It is, of course, perfectly proper to comment on the interest that a witness may have in a proceeding, to discuss his compensation, but it is not proper to exceed in argument that which was introduced as evidence or that which is a reasonable inference from the proper evidence. *Commonwealth Electric Co.* v. *Rose,* 214 Ill. 545; *Waschow* v. *Kelly Coal Co.* 245 Ill. 516.

The record of this proceeding does not contain the closing argument by counsel for the State, nor does it contain the complete closing argument of either of the counsel for the defendants. As indicated by the excerpt that is contained in the record above set forth, the court did not rule upon the objections by Mr. Powless, nor did Mr. Powless persist in his objection and obtain a ruling thereon from the trial court.

Alleged error in the closing argument to the jury will not be considered on appeal, in the absence of a ruling by the trial court as to the propriety of the argument. In this case, objection was interposed to certain of the remarks of counsel in his closing argument, but there was no ruling obtained from the court and the absence of such a ruling precludes review in this court. (*Waschow* v. *Kelly Coal Co.* 245 Ill. 516; *Pike* v. *City of Chicago,* 155 Ill. 656.) In the last cited case the court said: "It is next claimed that improper remarks were made by counsel for petitioner in opening and closing the argument to the jury. It is a sufficient answer to this objection that the court was not called upon to make any ruling upon the objections noted by counsel. That was necessary in order to raise the question here."

Further, as noted, only a small excerpt of the closing argument is contained in the abstract and in the report of proceedings. This court has no way of knowing whether the remarks were or were not in response to like comments by the other side. We cannot and do not approve of the language quoted from the argument but, on the basis of

the record before us, we are unable to determine what, if anything, provoked such remarks. Accordingly, in the absence of the complete argument and in the absence of rulings by the trial court on such of the argument as is included in the record, we must engage in the reasonable presumption that the trial judge has performed his duty and has properly exercised the discretion vested in him. We must assume that he has permitted no misconduct of counsel materially prejudicial to the opposite party to intervene, and certainly we cannot conclude that there was such misconduct or prejudicial argument unless the same is clearly shown by the record. *North Chicago Street Railway Co.* v. *Cotton,* 140 Ill. 486.

The State further makes complaint of the action of the trial court in refusing to give an offered instruction that the jury could disregard the testimony of any witness if by reason of the interest or want of knowledge or experience of that witness the jury believed the value or damages had been unjustly exaggerated. The instruction as offered by the State and as refused by the court made no reference to the testimony of any witness that for the same reasons might have minimized the damages. In *City of Chicago* v. *Harrison-Halsted Building Corp.* 11 Ill.2d 431, we expressly held that it was not error to refuse such an instruction since it was not framed so as to authorize the jury to disregard both unjust exaggeration and unjust minimization. In *County of Jackson* v. *Wayman,* 369 Ill. 123, we held that an instruction relating only to exaggeration of value or damages was improper, although the giving of such an instruction on the facts of that case was not held to be reversible error. This matter of an instruction authorizing the jury to disregard opinions that appear to be minimized or exaggerated is fully discussed in the last cited case. The court adhered to the opinion expressed in that case in the *City of Chicago case,* and, so that there can be no further doubt, we now hold that an instruction such as

the one here tendered should not be given unless the same relates to unjust exaggeration as well as unjust minimization. The action of the trial court in refusing to give the offered instruction was, therefore, correct.

A further instruction tendered by one of the defendants is complained of by the State in that it referred to the elimination of any and all existing rights and easements of access without specifically referring to the right of access by the frontage or access road. While such a reference more properly should have been included in the instruction, certainly on the basis of the record before us we feel that the jury was very mindful of the existence of such an access or frontage road and the omission of reference thereto in the instruction could not operate to the prejudice of the State.

The balance of the matters relied upon for a reversal of this judgment and for a new trial by the State relates to certain isolated rulings by the trial court as to the admissibility of certain evidence. We have carefully reviewed this record and the rulings of the court thereon. In our opinion the rulings of the trial court were fair and reasonable. The objections complained of relate to matters immaterial to a proceeding of this type or more frequently relate to the action of the trial court in sustaining objections to statements of pure conclusions by witnesses of the State that were not responsive to the questions asked them. Inasmuch, therefore, as the verdicts of the jury are within the range of testimony and since upon a review of the whole record we consider the case clear of palpable mistake, the judgment of the circuit court of Williamson County is affirmed.

*Judgment affirmed.*