Carl S. Eggimann, as Administrator of the Estate of Robert E. Eggimann, Deceased, Plaintiff-Appellee, v. David Wise, Defendant-Appellant.
Arthur Walgrave and Wilbur Walgrave, as Administrators of the Estate of Virgil M. Walgrave, Deceased, Plaintiffs-Appellees, v. David Wise, Defendant-Appellant.

Gen. Nos. 11,693, 11,694. 

Second District, Second Division.

May 23, 1963.

Rehearing denied July 8, 1963.

Peterson, Johnson & Martin, of Princeton (Watts C. Johnson and Donald C. Martin, of counsel), for appellant.

Andrews & Andrews, of Kewanee, William F. Kirman, of Annawan, and D. J. McRae, Welch & Blachinsky, of Kewanee, for appellees.

CROW, J.

The plaintiff Carl S. Eggimann, as Administrator of the estate of Robert E. Eggimann, deceased, brought an action in two counts under the wrongful death act to recover from David Wise, defendant, damages on behalf of the next of kin of Robert E. Eggimann, deceased, and a third count in the same suit by the administrator sought to recover for the funeral and burial expenses of the decedent. The plaintiffs Arthur Walgrave and Wilbur Walgrave, as Administrators of the estate of Virgil M. Walgrave, deceased, brought a separate action under the Wrongful Death Act in two counts to recover from the same defendant damages for the benefit of the next of kin of Virgil M. Walgrave, deceased, and a third count in the same suit by those administrators sought to recover for the funeral, medical and hospital expenses of that decedent. These suits were consolidated for trial, resulting in verdicts by the jury for each of the plaintiffs administrators on Counts I, II, and III of each Complaint, the verdicts for the plaintiff Eggimann being $5000 on Counts I and II and $853.15 on Count III, and the verdicts for the plaintiffs Walgrave being $7500 on Counts I and II and $3894.39 on Count III. An appeal is taken by the defendant from the judgments for $5853.15 for the plaintiff Eggimann and $11,394.39 for the plaintiffs Walgrave, entered upon those verdicts, the Court having denied the defendant's post-trial motions for judgment notwithstanding the verdict or new trial.

Count I of each complaint alleges ordinary negligence against the defendant David Wise. Count II of each Complaint alleges wilful and wanton conduct of the defendant. Count III of each Complaint was for the funeral, or hospital and medical, expenses of

473

each decedent and alleges the same were incurred by the respective administrators because of the defendant's negligence. In each case the defendant by his answer, in substance, denied the allegations of the Complaint. The defendant also filed a counterclaim in the Walgrave case for personal injuries against the administrators of the estate of Virgil M. Walgrave, deceased, alleging ordinary negligence against that decedent. The plaintiffs-counterdefendants Walgrave denied, in substance, the allegations of the counterclaim. At the close of all the evidence the Trial Court granted a motion by the administrators of the estate of Virgil M. Walgrave, deceased, to instruct the jury to find those counterdefendants not guilty under the counterclaim.

Various alleged errors are relied on by the defendant-counterplaintiff for reversal, namely: (1) as a matter of law, in this action the plaintiffs administrators of the decedents could not sue (in Count III) for the funeral, hospital, and medical expenses of their intestates; (2) there was no competent evidence of pecuniary loss by the respective next of kin, and the refusal of certain defendant's instructions on that subject; (3) the giving of certain plaintiffs' instructions, including those as to the forms of verdicts; (4) the giving of the Court's Instruction No. 1; (5) the directing of a verdict for the counterdefendants Walgrave on the counterclaim; (6) denial of the motion of the defendant Wise to direct a verdict in his favor as to the complaint of the plaintiff Eggimann as administrator; and (7) not permitting the defendant Wise to testify as to the facts of the occurrence.

The plaintiffs' theories are that: there is competent evidence that the defendant Wise was guilty of ordinary negligence and wilful and wanton conduct. The testimony of many witnesses and the photographic evidence showed the skid marks of the defendant's auto and the debris resulting from the collision were located

in the plaintiffs' decedents' lane of traffic. Likewise, both automobiles were located on the plaintiffs' decedents' side of the road after the collision; the alleged errors in the admission of evidence, instructions, and post-trial rulings are not well founded; there is an action for medical, hospital, and funeral bills on behalf of a decedent's estate where it has incurred such due to the defendant's negligence, regardless of whether a widow survives; there was competent evidence of loss of services and contributions by the decedents to the brothers and sisters or other collateral next of kin of both decedents; the court in directing a verdict on the defendant's counterclaim was correct because there was no evidence that the decedent Walgrave was guilty of negligence and the overwhelming evidence showed the defendant Wise guilty of negligence and wilful and wanton conduct; the defendant was not competent to testify to the facts of the occurrence; the Court was correct in not directing a verdict of not guilty as to the complaint of the plaintiff Eggimann as administrator.

These suits grew out of a collision between an automobile driven by Virgil M. Walgrave, deceased, in which Robert E. Eggimann, deceased, was riding, and an automobile being driven by the defendant Wise. Virgil M. Walgrave and Robert E. Eggimann both died as a result of injuries sustained in the collision. Each decedent was survived by collateral next of kin, i. e., brothers and sisters, or children of a deceased brother or sister. Neither was or had been married. Eggimann was 62 years old. Walgrave was 37 years old. The facts and circumstances relative to the alleged pecuniary loss by the respective next of kin of each decedent need not be here stated in view of the disposition we believe should be made of the cause. There were no eyewitnesses qualified to testify to the occurrence. The collision happened shortly after midnight on June 11, 1961 on State Route 78, a

two-lane paved (asphalt-blacktop) highway, approximately five miles north of Kewanee and about five miles south of Annawan. There is a black and white center line and on each side of the road is a yellow line. The road runs generally north and south, but at a point approximately five miles north of Kewanee it jogs east for approximately one-half mile and then turns north directly towards Annawan. The collision occurred on the curve towards the north, which is wide and sweeping. The road is level as it approaches the curve. The highway was dry. Visibility (as far as could be at night) was good. At the time of the Collision Virgil Walgrave was driving a 1954 Ford coming from Kewanee and going to his home in Annawan, and the defendant Wise was driving a 1957 Ford south on Route 78 from Annawan, approaching the curve from the north. There was testimony of certain witnesses who arrived at the scene after the collision took place, who described in varying aspects the scene itself, the cars involved, the positions of the cars, the positions of Walgrave, Eggimann, and Wise, and the debris. The photographs in evidence of the scene and the cars, show, inter alia, the curve, from both directions, and (coming from the north) a 45 m. p. h. sign, a curve sign, and a "No Passing" zone sign, and the Wise car in approximately the position it was in immediately after the collision, and the Walgrave car in the position to which it had been moved by a wrecker after the collision. There was some evidence that the decedent Walgrave had had some beer about one hour before the accident. Walgrave and Eggimann lived in Annawan. Within a half hour prior to the collision Walgrave had driven one Oldeen to Kewanee, with Eggimann as a passenger also. After letting Oldeen out at Kewanee Walgrave started back to Annawan with Eggimann as a passenger in the right front seat.

476

Two of the witnesses, Floyd Collins and his wife, Barbara, were the first to arrive. Floyd Collins stated that the two cars were 5 to 7 feet apart and all of the parties appeared to be completely unconscious. He drove around the left or west side of the cars. The cars were not moved until the wrecker arrived.

Andy Nelson, a wrecker driver, arrived later, after the ambulance but before the State Police. He testified that the Walgrave car, a 1954 Ford, was headed north on an angle off the east (northbound) side of the road, the front was off to the east, off of the road, with the rear wheels east, or right, of the center line of the highway, just on the edge of the highway. The Wise car, a 1957 Ford, was north of the Walgrave car, headed south in the northbound lane of traffic. Both cars were on the east (northbound) side of the highway. There was a concentration of debris east of the center line of the highway.

Mack R. Miller, a State Trooper, arrived about 1:15 a. m. and found the Wise car completely in the east (northbound) lane of traffic, and he found debris consisting of glass, metal and dirt in the east lane of traffic 27 feet north of the Wise car. There were marks on the highway in the northbound lane beginning at about the center line and extending south 200 feet to the pile of debris. He saw scratches, or a gouged place, in the highway from the debris to the final resting place of the Wise car. The Wise car was in the northbound lane, its right front wheel almost to the center line, and its left rear wheel on the shoulder on the east side of the pavement. The 1954 Ford (Walgrave's car) was pointed easterly or northeasterly, the front part on the gravel off the highway,—it was in the east lane. Miller later went to St. Francis Hospital in Kewanee where Wise and Walgrave were taken. The room where Wise was "reeked of alcoholic liquor." He went past the foot of Wise's bed and observed a liquor odor coming from Wise and

Wise was loud and using profanity. Two other Troopers testified to much the same effect as Miller as to the scene of the accident and said the marks on the highway north of the Wise car appeared to be skid marks.

Ralph N. Cole, the Coroner of Henry County, went to the Hospital about 1:00 a. m. He was in the room with Wise, within 2½ feet of him. He observed that Wise was in a stupor, mumbling, and had a very strong odor of liquor about his cot and near him. He later went to the scene of the collision. He observed the skid marks east of the center line and continuing in a southerly direction. They started at the center line, veered left, and then back toward the center line.

Dr. William B. Larson, of Annawan, arrived at the scene of the accident shortly after midnight and before the ambulance arrived. Wise was still in his car. Walgrave was hanging out the left front door of his car by his feet. Eggimann was on the right side of the front seat of that car, crumpled over. He helped remove all of them. The Walgrave car was on the east side of the road, the right front wheel partly off the road. The Wise car was on the east side of the center line, pointed south. Eggimann died after he was removed from the car. Walgrave died twelve days later.

Three witnesses testified to the safe driving habits and reputation as a safe driver of the decedent Walgrave. Two witnesses also testified to the careful driving habits of the defendant Wise. There was no testimony of that nature concerning Robert E. Eggimann, deceased, the passenger in the Walgrave car, or as to his actions while riding in the car or as to his habits other than as may be inferred from the other facts and circumstances in evidence.

Theodore Oldeen, the party whom the decedent Walgrave drove to Kewanee just prior to the return trip

478

to Annawan during which this accident occurred, a witness for the defendant, said Walgrave drove perfectly alright and observed the speed laws on the trip to Kewanee, he drove on the right side of the road, appeared sober, and kept control of his faculties. He had met Walgrave earlier that evening in an Annawan tavern where Walgrave was playing cribbage. Walgrave had two "short" beers while there before leaving on the Kewanee trip. They went directly there.

The plaintiffs' instruction as to the forms of verdict in the Eggimann case, referred to as Plaintiff Eggimann No. 23 (IPI No 45.03 Modified), was:

### Verdict Form "A"

This form is to be used if you find for the plaintiff Carl S. Eggimann as administrator of the estate of Robert E. Eggimann, deceased, on Counts I or II of the complaint:

> We, the jury, as to Counts I and II of his complaint find in favor of the plaintiff Carl S. Eggimann as administrator of the estate of Robert E. Eggimann, deceased, and against the defendant.

We assess the damages in the sum of $————

### Verdict Form "B"

This form is to be used if you find in favor of the defendant and against the plaintiff Carl S. Eggimann as administrator of the Estate of Robert E. Eggimann, deceased, on Counts I and II of his complaint:

> We, the jury, find in favor of the defendant and against the plaintiff Carl S. Eggimann as administrator of the Estate of Robert E.

Eggimann, deceased, as to Counts I and II of his complaint.

## Verdict Form "C"

You must find a separate verdict as to Count III of the complaint of Carl S. Eggimann as administrator of the estate of Robert E. Eggimann, deceased, and you may use this form if you find for said administrator:

> We, the jury, as to Count III of his complaint find in favor of the plaintiff Carl S. Eggimann as administrator of the estate of Robert E. Eggimann, deceased, and against the defendant.

We assess the damages in the sum of $——— (insert in this blank the amount of the funeral expenses of said decedent as you find the same from the evidence.)

## Verdict Form "D"

This form is to be used if you find in favor of the defendant and against the plaintiff Carl S. Eggimann as administrator of the estate of Robert E. Eggimann, deceased, as to Count III of his complaint:

> We, the jury, find in favor of the defendant and against the plaintiff Carl S. Eggimann as administrator of the estate of Robert E. Eggimann, deceased, as to Count III of his complaint.

> You will write out your verdicts, each of you sign same and return them into open court.

The plaintiffs' instruction as to the forms of verdict in the Walgrave case, referred to as Plaintiff Walgrave No. 9 (IPI No 45.03 Modified), was:

## Form of Verdict "A"

This form is to be used if you find for the Plaintiffs, Arthur Walgrave and Wilbur Walgrave, as Administrators of the Estate of Virgil M. Walgrave, deceased, on Counts I or II of their Complaint:

> We, the jury, as to Counts I and II of their Complaint, find in favor of the Plaintiffs, Arthur Walgrave and Wilbur Walgrave, as Administrators of the Estate of Virgil M. Walgrave, deceased, and against the defendant. We assess the damages in the sum of $————.

## Form of Verdict "B"

This form is to be used if you find for the Defendant and against the Plaintiffs, Arthur Walgrave and Wilbur Walgrave, as Administrators of the Estate of Virgil M. Walgrave, deceased, as to Counts I or II of their Complaint:

> We, the jury, find in favor of the Defendant and against the Plaintiffs, Arthur Walgrave and Wilbur Walgrave, as Administrators of the Estate of Virgil M. Walgrave, deceased, as to Counts I and II of their Complaint.

## Form of Verdict "C"

You must find a separate verdict as to Count III of the Complaint of Arthur Walgrave and Wilbur Walgrave, as Administrators of the Estate of Virgil M. Walgrave, deceased, and you may use this form if you find for said administrators:

We, the jury, as to Count III of their Complaint, find in favor of the Plaintiffs, Arthur Walgrave and Wilbur Walgrave, as Administrators of the Estate of Virgil M. Walgrave, deceased, and

481

against the Defendant. We assess the damages in the sum of $————.

(Insert in this blank the amount of medical and funeral expenses you find from the evidence.)

### Form of Verdict "D"

This form is to be used if you find in favor of the Defendant and against the Plaintiffs, Arthur Walgrave and Wilbur Walgrave, as Administrators of the Estate of Virgil M. Walgrave, deceased, as to Count III of their Complaint:

We, the jury, find in favor of the Defendant and against the Plaintiffs, Arthur Walgrave and Wilbur Walgrave, as Administrators of the Estate of Virgil M. Walgrave, deceased, as to Count III of their Complaint.

You will write out your verdicts, sign the same and return them into open court.

The Court's Instruction No. 1, referred to as Court's Instruction No. 1, (IPI 21.02), was:

"As to Count 1 and 2, each of the plaintiffs have the burden of proving each of the following propositions:

First, that the plaintiffs' decedent before and at the time of the occurrence was using ordinary care for his own safety.

Second, that the defendant acted, or failed to act in one of the ways claimed by each plaintiff as stated to you in these instructions and that in so acting, or failing to act, the defendant was negligent.

Third, that the negligence of the defendant was a proximate cause of the death of each of plaintiffs' decedents.

Fourth, that the next of kin of each of said decedents sustained pecuniary injury, including money, goods and services.

As to Count 3, the plaintiffs must prove the first three items above, and fourth, that each plaintiff incurred medical and funeral expenses.

If in each case you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff, but, if on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendant."

The defendant objected at the conference on instructions to these instructions as to the forms of verdicts "A" and "B",—urging they at one point referred to Count I *or* II, and at another to Count I *and* II,—that there should be separate verdicts as to Count I and Count II and Count III,—that they were not proper to inform the jury as to what the case was about,—and for other reasons. The Trial Court was apparently not satisfied with the forms of verdict,— thought there ought to be separate forms of verdicts for the plaintiff and defendant on each of the Counts I, II, and III,—and thought the defendant was entitled to separate verdicts. Notwithstanding, these instructions were given, though with some announced reservations. The Court's Instruction No. 1 was evidently not a designated instruction prepared by counsel for the plaintiffs or defendant pursuant to the Court's direction, and the defendant evidently had no opportunity to object thereto at the conference on instructions: Supreme Court Rule 25–1 (Ill Rev Stats 1961, c 110, § 101.25–1).

█ The deaths of Walgrave and Eggimann could not have been caused wilfully or wantonly,—and negligently,—at the same time; negligence, and wilfulness

are unmixable; a verdict finding the defendant guilty of negligence is, in effect, a verdict finding the defendant not guilty of wilfulness and wantonness; negligence is not wilfulness or wantonness, and wilfulness or wantonness is not negligence: Grinestaff v. New York Cent. R. (1929) 253 Ill App 589; Burns v. Chicago & A. R. Co. (1923) 229 Ill App 170; Stoike v. Bonasera (1927) 243 Ill App 281.

Verdict Form "A" in both the Plaintiff Eggimann No. 23 instruction and the Plaintiff Walgrave No. 9 instruction required the jury, if it found in favor of the respective plaintiffs, to so find as to *both* Count I, ordinary negligence, and Count II, wilful and wanton. That is a logical, and legal, impossibility. Moreover, if the jury were of a mind to find for the respective plaintiffs in some manner they could not do so thereunder unless they so found as to *both* Counts I and II. They should not have been so required. There was no such burden on the plaintiffs. The jury should have been left free to find separately as to Count I and Count II.

Verdict Form "B" in both of those instructions required the jury, if it found in favor of the defendant, to so find as to *both* Count I, ordinary negligence, and Count II, wilful and wanton. If the jury were of a mind to find for the defendant in some manner they could not do so thereunder unless they so found as to *both* Counts I and II. They should not have been so required. The jury should have been left free to find separately as to Count I and Count II.

The Court's Instruction No. 1 purports to relate to both Count I, ordinary negligence, and Count II, wilful and wanton,—as well as Count III,—and is peremptory in character,—but it refers only to some of the elements of a cause of action for ordinary negligence, Count I, and refers to none of the elements of a cause of action for wilful and wanton conduct, Count II,

and nevertheless tells the jury, in part, if they find the propositions proved their verdict should be for the plaintiff. It is inaccurate and incomplete as to at least Count II, wilful and wanton, but, notwithstanding, it permitted a verdict on Count II for the plaintiffs.

■ In drawing verdict forms care must be taken to ensure that they cover every possible finding the jury may make under the evidence from the point of view of each plaintiff and each defendant: Illinois Pattern Jury Instructions, p 201. These forms of verdict do not.

■ Taken together, those instructions, and the indicated forms of verdict, we believe, had a tendency to confuse the jury. At best, the distinction in law between wilful and wanton conduct, and ordinary negligence, is not a matter with which the average juror is particularly familiar: Greene v. Noonan et al. (1939) 372 Ill 286, 23 NE2d 720. The principles of law involving each are different. There should have been separate forms of verdict on and relating to each count, both for the respective plaintiffs, and for the defendant. These instructions as to forms of verdict "A" and "B" and the Court's Instruction No. 1 were erroneous and prejudicial, and the verdicts which ultimately resulted are, under the circumstances, against the law and not responsive to the issues: Grinestaff v. New York Cent. R. (1929) 253 Ill App 589. Cooper v. Cox et al. (1961) 31 Ill App2d 51, 175 NE2d 651, Goertz v. Chicago & N. W. Ry. Co. (1958) 19 Ill App 2d 261, 153 NE2d 486, and Powell et al. v. Myers Sherman Co. (1941) 309 Ill App 12, 32 NE2d 663, referred to by the plaintiffs, are not helpful on this point. The defendant might have been more specific in some respects in his post-trial motions, but, we believe they sufficiently specify his points or grounds.

■ As to whether the Trial Court committed error in directing a verdict, at the close of all the evi-

485

dence, for the plaintiffs-counterdefendants Walgrave on the defendant's counterclaim, the counterclaim alleged negligence on the part of Walgrave, as the driver of his car, and due care on the part of the defendant-counterplaintiff, it being alleged the decedent Walgrave negligently operated his automobile, negligently drove at a dangerously high and excessive rate of speed, failed to keep his car under proper control, drove across the center line and on the west side of the road, and was under the influence of intoxicating liquors. It is urged by the plaintiffs-counterdefendants Walgrave there was no competent evidence in behalf of the counterclaimant's counterclaim. The defendant-counterplaintiff produced testimony of two witnesses as to his careful driving habits. In addition, there was circumstantial evidence which the jury could consider on the question of the defendant-counterplaintiff Wise's negligence, and the decedent Walgrave's negligence, from which the jury could, and had to, draw inferences and conclusions. The plaintiffs Walgrave's motion for directed verdict on the counterclaim presented the single question whether there is any evidence which, standing alone, and taken with all its intendments most favorable to the defendant-counterplaintiff, tends to prove the material elements of his case; if there is no complete absence of probative facts to support an inference for the defendant-counterplaintiff the motion ought to be denied: Lindroth v. Walgreen Co. et al. (1950) 407 Ill 121, 94 NE2d 847. On such a motion it is not the province of the Court to weigh and determine the preponderance of the testimony; if there is evidence, the cause must be submitted to the jury even though the greater weight thereof may seem to the Court to be on the side of the other party: Mirich v. T. J. Forschner Contracting Co. (1924) 312 Ill 343, 143 NE 846 and cf. Corrado et al. v. Bingham (1958) 17 Ill App2d

537, 150 NE2d 837; Hunsley v. Wurl (1950) 341 Ill App 247, 93 NE2d 151; Hamilton v. Toler (1949) 338 Ill App 656, 88 NE2d 528.

■ We think there were issues of fact to be decided by the jury in that regard, after weighing the evidence, determining the credibility of the witnesses, and drawing reasonable inferences and conclusions therefrom, and the Court erred in directing a verdict against the defendant-counterplaintiff Wise on the counterclaim. There was no complete absence of probative facts to support an inference for the defendant-counterplaintiff, however we might feel as to the weight of the evidence. It was for the jury, not the Court, to weigh the evidence, determine the credibility of the witnesses, and draw the inferences and conclusions therefrom.

■■ The defendant urges that the plaintiffs administrators of each decedent's estate could not sue in this action for funeral, hospital, and medical expenses of the deceaseds, which they had incurred, under Count III. We think there is no merit in this contention. There may be no recovery for those items under the Wrongful Death Act under Counts I or II, but we see no just reason why the administrators, as a separate cause of action, even though there was no surviving widow, could not bring a suit for hospital, medical and funeral expenses incurred by them, under Count III, if under the facts there is otherwise a cause of action, i. e., if the same were proximately incurred by reason of the negligence of the defendant and the decedent was not contributorily negligent: Saunders v. Schultz (1960) 20 Ill2d 301, 170 NE2d 163.

There are other errors relied on for reversal, but since, in our view, this case will have to be retried we do not think it necessary to pass upon them.

The judgments are reversed and the causes remanded with instructions to allow the defendant's post-trial motions for a new trial.

Reversed and remanded.

WRIGHT, PJ and SPIVEY, J, concur.