Irma M. Paulsen, Plaintiff-Appellee, v. Gateway Transportation Company, Inc., a Corporation, Defendant-Appellant.

Gen. No. 69–41.

Second District.

November 4, 1969.

Pedderson, Menzimer, Conde and Stoner, of Rockford, for appellant.

Russell J. Goldman and R. A. Jacobsen, of Rockford, for appellee.

PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court.

This is an action for personal injuries arising out of an auto accident on July 20, 1965. In the trial of this case the plaintiff proved medical bills amounting to $1,318.30, and claimed lost wages of $2,800 in addition thereto. The jury returned a verdict of $37,500 on behalf of the plaintiff upon her claim that the accident occasioned the surgical removal of an intervertebral disc in February of 1966. The accident occurred when the defendant's trac-

tor-trailer struck the rear end of plaintiff's vehicle, driving it into a vehicle in front of her.

Two assignments of error are made. Both concern the conduct of plaintiff's counsel; first, in his examination of the plaintiff during the trial and second, during his argument to the jury.

The record discloses that the court reporter was not present at the time of plaintiff's opening statement and defendant's closing argument, ". . . but was called in by the Court in the middle of Mr. Goldman's final argument before the jury. . . ." Plaintiff, in her brief, states ". . . the court can read the same and decide whether or not the trial judge erred in his judgment. . . . It should also be noted that only part of plaintiff's closing argument was reported and none of the appellant's argument to the jury was reported, and, therefore, is not subject to review by the Appellate Court."

██ The plaintiff has not cited any authority for this proposition; however, in the case of Brown v. Schintz, 98 Ill App 452, 455 (1901) it was held:

> "Although the transcript of record is not complete as to the whole case, yet if it fully and fairly presents all matters material and necessary for a decision of the questions involved, under the assignments of error, it is enough." (Citations omitted.)

The Brown case was later affirmed by the Supreme Court, 202 Ill 509, 67 NE 172 (1903), and in quoting from an earlier case of Bertrand v. Taylor, 87 Ill 235, it had this to add at pages 512–513:

> " '. . . This court cannot properly consider any question arising upon the record unless we have a full record before us, *or* it is made known to us in some approved manner that the transcript contains all parts of the record material to the question submitted to us for decision.' " (Emphasis added.)

The defendant relies upon only the transcribed portion of the plaintiff's closing argument to present one of his questions of error. Even if the closing remarks of defendant's counsel were of such a nature as to provoke the final remarks of plaintiff's counsel, which is not claimed herein, still, under the Brown case, an "approved manner" for making such instance known to this Court would be for the plaintiff to use Supreme Court Rule 323(c). We, therefore, find no merit to plaintiff's contention in this regard.

Some excerpts of plaintiff's closing argument to the jury, which are mostly directed at defense counsel, are as follows:

> "Is that fair, ladies and gentlemen of the jury to try and deprive this poor widow of whatever she has coming? . . .

> "Would you want that to happen to you, to be treated that way?"

> Counsel referred to defense counsel as ". . . this man who plays fast and loose with the facts in this case, such as counsel has done." The court overruled an objection and plaintiff's counsel then continued:

> "Think about all of that. Think about it. It isn't decent, it isn't fair. He is trying to change the facts by trickery, he is trying to change the situation, he is trying to color the facts, to distort the facts and take them out of context.

> "But I'm up to his gimmicks, I'm up to his tricks."

> While referring to a doctor who had testified on behalf of the plaintiff, counsel, directing his remarks at defense counsel, observed the doctor had: ". . . graduated from medical school in 1928 before this guy was born."

Shortly thereafter counsel argued, ". . . And while that doctor was doing that very thing for his country (referring to the fact that the doctor was a surgeon in a field hospital during the war), this attorney, the attorney for the defendants had just gotten out of his rompers and was an escapee from a playpen."

Continuing on about the doctor, counsel stated: ". . . But to now come in and find after all those 42 years of practice and a member of all these learned medical societies in connection with his profession, and find this young man who was not even born when he started to practice medicine, who was just getting out of his rompers when the doctor was in the Army. . . ."

In referring to defense counsel's examination of the plaintiff's physician and a myelogram examination, plaintiff's counsel argued, ". . . Then Mr. Stern asked the doctor, getting back to Mrs. Paulsen, whether or not she should have a myelogram, and again they had to torture her some more. They are not satisfied that they put her in the hospital and caused her one operation which laid her up for ten months, now they want to subject her to this horrifying, terrible ordeal of another jab with the needle into her back and go through that again. That is what they want to do, and the doctor tells you absolutely not, it can't be done.

". . . Ladies and gentlemen of the Jury, he has the temerity, the guts, the gall to bring it up time and time again about this arthritic condition. . . ."

While other objections were made, the only objection to the foregoing statements is noted and set out above. Appellee maintains that counsel waived any objection because he failed to object at the time of trial.

Certainly it is the duty of counsel to promptly object to improper conduct or argument in order that both

246

parties receive a fair trial of the legal issues present. It is the duty of the trial court to control the proceedings to the extent necessary to insure this result. In a proper case the court has the duty to act promptly to stop misconduct. If the argument of counsel is seriously prejudicial, the court on its own motion should stop the argument and direct the jury not to consider it.

██ ██ In a clear case, this court will reverse a judgment because of improper conduct and prejudicial statements even though timely objections have been granted and the jury instructed to disregard the remarks. In a case where prejudicial arguments or improper conduct of counsel affect the case to the extent that the litigants cannot receive a fair trial and the judicial process suffers deterioration, this court may consider such an assignment of error even though no objection was made and no ruling made or preserved thereupon by court or counsel. (Belfield v. Coop, 8 Ill2d 293, 311–313, 134 NE2d 249 (1956).)

██ This court may thus consider the assignment of error notwithstanding the failure of the defense attorney to object to each statement. The attacks were clearly attacks upon defense counsel. It is obvious that the above remarks have no application to any issue in the case. This court views remarks of plaintiff's counsel as an unwarranted characterization of defendant's counsel and a successful effort to belittle, impugn and ridicule him and thus deprive the defendant of fair treatment by the jury.

██ The constitutional right of trial by jury is not a license to counsel to indulge in abusive and prejudicial conduct to gain a verdict, nor does it grant any privilege to embarrass, belittle and abuse an adversary before a jury to such an extent that the hope of the adversary to obtain respectful consideration at the hands of the jury is destroyed or seriously jeopardized. Vujovich v. Chicago Transit Authority, 6 Ill App2d 115, 122–123, 126

NE2d 731 (1955) ; Vandaveer v. Norfolk & Western Ry.
Co., 78 Ill App2d 186, 207–208, 222 NE2d 897 (1966).

■ In this court's view of the case, the conduct
of counsel and the verdict leads us to the conclusion that
plaintiff's counsel was successful and that the prejudicial
argument had an obvious prejudicial effect upon the
jury.

Defendant assigns, as further error, two other incidents
which occurred during trial.

First, in his direct examination of the plaintiff, her
counsel established that she was a widow since 1951 with
two children, 18 and 30 years of age. He then inquired:

Q. "And this boy has been living with you ever since
   he was born, the 30 year old one?"
A: "Yes."
Q: "What is his condition?"
A: "You mean, the older boy?"
Q: "Yes."
A: "He is a quadraplegic."
Q: "And you are his sole support?"
A: "Yes."

Second, defendant complains that, in his closing argu-
ment to the jury, plaintiff's attorney referred to the
plaintiff as a "poor widow."

■ Because of our prior conclusion it is not
necessary to discuss at length the propriety of the above
two assignments of error. However, the court suggests
some guidelines for the retrial of this case. The mere
statement, upon direct examination, that the plaintiff was
a widow is not in itself prejudicial. The fact that she is
the sole care of a quadraplegic son was not an issue
in this case and certainly should be avoided upon the re-
trial. The reference to the plaintiff as a "poor widow" in
the closing argument is an obvious effort at sympathy
and prejudice. All of the foregoing taken together could
easily be considered reversible error.

248

The judgment of the trial court denying the post-trial motion for a new trial is reversed and the cause remanded for a new trial in accordance with this decision.

Reversed and remanded.

DAVIS and SEIDENFELD, JJ., concur.