MINNIE LEE HUNTER, Plaintiff-Appellant, *v.* DR. FRED SUKKAR, Defendant-Appellee.

Fourth District   No. 4—82—0054

Opinion filed December 15, 1982.

John Gadau, of Zimmerly, Gadau, Stout, Selin & Otto, of Champaign, and James D. Koerber, law student, for appellant.

Richard F. Record, Jr., of Craig & Craig, of Mattoon, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

Plaintiff filed a complaint against Dr. Fred Sukkar alleging negligence in post-operative care which defendant provided her. The case was heard before a jury in Champaign county circuit court and a verdict was returned in favor of the defendant. Plaintiff's post-trial motion for a new trial was denied. Plaintiff claims error by the trial court on several rulings made during the course of the trial and seeks a new trial.

We affirm.

The issues raised here require only a brief summary of the facts presented at trial. Plaintiff's forearm was severely injured on March 19, 1977. On March 22, 1977, defendant operated on the arm and thereafter continued treatment. Defendant used a surgical technique known as ASIF. It involves using metal plates and screws to join to-

gether and promote the healing of bone fractures. The technique was developed in Switzerland and the standards for its use are of a universal character. Plaintiff's arm failed to heal properly, which necessitated a further operation which was performed by defendant. When the arm still failed to heal, plaintiff had a third operation which was done by another physician.

Plaintiff apparently did not claim negligence in the surgery itself, but rather maintained defendant was negligent in his instructions and warnings to plaintiff regarding her returning to work and using the injured arm. Defendant's failure to sufficiently instruct plaintiff allegedly led to the overuse of the arm and its failure to heal properly. Plaintiff called Dr. David L. Becker of Milwaukee, Wisconsin, as an expert witness. Becker testified that he is an orthopedic surgeon licensed to practice in Wisconsin since 1969. He is engaged in a group practice. He had never seen plaintiff before trial. He admitted that his evaluation and testimony regarding defendant's care of plaintiff's injury was done for remuneration. Prior to the present case, Becker had testified in one previous trial. However, he had done other evaluations and given evidence depositions for both plaintiffs and defendants. Between 1976 and 1980, Becker gave between 30 and 50 such consulting opinions. Becker's testimony was based on national standards for the use of the ASIF technique. In his opinion, based on such national standards, the warnings and instructions given by defendant to plaintiff regarding the use of her arm were inadequate.

■ During defendant's closing arguments, the following exchange took place:

> "Dr. Becker and Mr. Gadau say this surgery met the standards yet it wasn't very good. They also say it wasn't very good yet it would have worked if there wasn't activity by Mrs. Hunter. They work it both ways because in doing so—and *Dr. Becker has an interest in doing so* and persuaded to the Plaintiff's—
>
> MR. GADAU: I object. There's no evidence that Dr. Becker has any interest in this litigation.
>
> THE COURT: That's overruled. That's a fair statement." (Emphasis added.)

Defense counsel then continued his closing argument in which course he made the following statements to which plaintiff raised no objections:

> "Mrs. Hunter and *Dr. Sukkar are bias[ed], interested witnesses*. They think they're right. So you take that into account when you listen to them.
>
> *I suggest to you that Dr. Becker is bias and interested in this*

*case. Dr. Becker is a professional witness. Dr. Becker testifies all the time.* He said I've only testified in court once before today. He has given numerous evidence depositions. \*\*\* So Dr. Becker testifies frequently. He said, when asked him, if it wasn't true from 1976 to January of 1980, a period of more than three and a half years, four years, he had 30 to 50 consultations, but he wanted to be sure that I understood not just in Illinois; that takes him outside. *How much does that man practice orthopedics?* He is actively engaged in appearing before jurys, and I suggest to you that the other doctor in this case, Dr. Bussey, who spends all of his time practicing orthopedics, who doesn't travel here and there and I don't know where to testify, is a person who doesn't have an interest other than that he wants to say what his opinions are to you and he did. \*\*\* I suggest that you discount and disregard Dr. Becker's testimony. *He is a hired gun and he is not worthy of your credit.''* (Emphasis added.)

On appeal, plaintiff objects to those portions of the above comments to which emphasis has been added and contends they are so improper and prejudicial that plaintiff was denied a fair trial.

"Counsel in the case are officers of the court and owe a duty to the court, to opposing counsel, to the cause of justice and to themselves." (*Eizerman v. Behn* (1956), 9 Ill. App. 2d 263, 286, 132 N.E.2d 788, 799.) "The purpose of a closing argument is to assist the jury in arriving at a verdict, with all facts presented fairly. Considerable latitude of expression on anything that is in evidence must be allowed counsel." (*Hopwood v. Thomas Hoist Co.* (1966), 71 Ill. App. 2d 434, 443, 219 N.E.2d 76, 81.) "The closing arguments of counsel must be confined to those matters that are in evidence or admitted and uncontroverted." (*Foerster v. Illinois Bell Telephone Co.* (1974), 20 Ill. App. 3d 656, 661, 315 N.E.2d 63, 67.) "It is not improper for an attorney to question either the credibility or judgment of a witness upon any legitimate ground, but an attorney has no right to indulge in violent or inflammatory language for the purpose of arousing the prejudice and passions of the jury nor to insult or abuse a witness without cause. [Citation.]" *Regan v. Vizza* (1978), 65 Ill. App. 3d 50, 53, 382 N.E.2d 409, 411.

Examining the first alleged prejudicial comment, and the ruling upon objection, we agree that the trial court's statement would have been better formulated if it had said, "that's a fair comment" rather than "fair statement" since there is some implication in the latter that the court agreed with counsel's assessment. However, we find

the language ambiguous, and the error, if any, was *de minimis*.

We also find that the substance of the trial court's ruling was correct.

> "It is, of course, perfectly proper to comment on the interest that a witness may have in a proceeding, to discuss his compensation, but it is not proper to exceed in argument that which was introduced as evidence or that which is a reasonable inference from the proper evidence. [Citations.]" (*Department of Public Works & Buildings v. Anastoplo* (1958), 14 Ill. 2d 216, 222, 151 N.E.2d 337, 341.)

Illinois court have taken a dim view of counsel impunging the integrity of physicians testifying as expert witnesses. See *Mattice v. Klawans* (1924), 312 Ill. 299, 143 N.E. 866; *Walsh v. Chicago Rys. Co.* (1922), 303 Ill. 339, 135 N.E. 709; *Ryan v. Monson* (1961), 33 Ill. App. 2d 406, 179 N.E.2d 449.

The evidence at trial established that Dr. Becker was a medical expert testifying at the behest of plaintiff and received compensation for that testimony. While inartfully worded, the context of the objected to, incomplete remark suggests that defense counsel was only calling the jury's attention to the fact that the witness was potentially biased because he was procured and compensated by defendant. The remark was not improper. *Anastoplo*.

The balance of the alleged prejudicial remarks occurred six pages later in the transcript and were received without objection. Generally, alleged error in closing arguments to the jury will not be considered on appeal in the absence of a ruling by the trial court as to the propriety of the argument. (*Anastoplo*.) Plaintiff maintains that her only objection and the trial court's ruling went to all of the alleged inflammatory and prejudicial remarks and that further objections were not necessary and would only have served to prejudice the jury. Since the balance of the remarks must have taken place several minutes after the first objection, and since we find them to be of a different nature than that to which the objection was made, we conclude that counsel had an obligation to raise a new objection.

In the alternative, plaintiff argues that the unobjected-to remarks were so inflammatory and prejudicial that they constitute plain error. If the argument of counsel is seriously prejudicial, the trial court has a duty to inject itself into the proceeding sufficiently to insure that the litigants receive a fair trial. (*Belfield v. Coop* (1956), 8 Ill. 2d 293, 312, 134 N.E.2d 249, 259; *Paulsen v. Gateway Transportation Co.* (1969), 114 Ill. App. 2d 241, 247, 252 N.E.2d 406, 409; *Rudolph v. City of Chicago* (1954), 2 Ill. App. 2d 370, 377, 119 N.E.2d 528, 531.)

"[I]f prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant cannot receive a fair trial and the judicial process cannot stand without deterioration, then upon review this court may consider assignments of error although no objection was made and no ruling was made or preserved thereon. [Citation.]" *City of Quincy v. V. E. Best Plumbing & Heating Supply Co.* (1959), 17 Ill. 2d 570, 577, 162 N.E.2d 373, 378.

Plaintiff has compared the closing remarks she objects to here with those in three other Illinois cases where a new trial was ordered because of prejudicial remarks. In *Regan v. Vizza* (1978), 65 Ill. App. 3d 50, 382 N.E.2d 409, plaintiff's medical expert was a physician who worked at the hospital where plaintiff sought medical attention and was recommended to plaintiff by the emergency care physician. The physician had previously testified for other plaintiffs. He was compared to "a hired gun in the old west" and a parallel was suggested between the TV character in "Have Gun Will Travel" and the doctor who has "medical testimony will travel." In *Cecil v. Gibson* (1976), 37 Ill. App. 3d 710, 711, 346 N.E.2d 448, 449, plaintiff's attorney was described as a: "slick attorney from Chicago," "a slick hired-hand," he "manufactured evidence," had a "wild imagination," was not worthy of the jury's trust, and was compared to a captain of a ship in piloting testimony from the expert witnesses. Plaintiff's medical expert was described as: "a sidekick, "a right-hand man," a "professional witness" who carried a "shiny black leather bag" containing instruments that "have never been used." The relationship between plaintiff's attorney and the witness was likened to that of the Cisco Kid and Pancho or Matt Dillon and Chester. In *Paulsen*, defense counsel was referred to as a man who "played fast and loose with the facts in this case" and who tried to "change the facts by trickery." Several other paragraphs of belittling diatribe were aimed at counsel. In *Regan*, timely objections were made to each prejudicial comment, in *Paulsen* the only objection made was overruled, and in *Cecil*, objections, or lack thereof, were not discussed.

■ These remarks which plaintiff objects to for the first time on appeal were clearly improper. Counsel went beyond merely noting Dr. Becker's compensation and its implication as to his credibility, to suggesting that he was "a professional witness," had no time to practice medicine, and was "a hired gun." Dr. Becker testified that he gave 30 to 50 medical consultations over a four-year period and that he was engaged in a group practice. There was no contrary testimony. Counsel's assertions were not supported by the evidence and were not

proper. (See *Ryon v. Javior* (1979), 69 Ill. App. 3d 946, 954, 387 N.E.2d 936, 942; see also *Principato v. Rudd* (1981), 102 Ill. App. 3d 362, 367, 430 N.E.2d 63, 66; *Regan.*) Furthermore, Illinois courts do not favor counsel referring to physicians who testify as medical experts with such pejorative terms as "hired guns." *Mattice*; *Walsh*; *Principato*; *Regan*; *Cecil.*

However, we find that the comments here do not reach the level of abusiveness and prejudice found in the above cases. There were no drawn-out insulting characterizations as in *Regan*, and no attacks on opposing counsel, no allegations of an illegitimate relationship between counsel and the expert witness, and no personally abusive comments as in *Paulsen* and *Cecil*. Also, as the trial court commented at the post-trial motion hearing:

> "The court believes that a jury—If there is any evidence in the record supporting such argument, is sophisticated sufficiently so that such references to an expert witness in [the absence of] objections thereto, are not so prejudicial as to affect the outcome of the case, and that is the opinion of the Court in this case that the remarks did not affect the outcome of the case. In other words, did not constitute reversible error."

From our examination of the record we conclude, as did plaintiff in her brief, that the trial result hinged largely on the jury's assessment of the credibility of defendant and plaintiff. The testimony of plaintiff's medical expert was not critical and if it was discounted by the jury it was because of the contrary testimony given by defendant's expert witness. Therefore, while we find that the alleged prejudicial comments were improper, we cannot say that the judicial process deteriorated therefrom to the point that plaintiff did not receive a fair trial.

■ Plaintiff also claims error in the instructions the jury received on the standard of care required of defendant in applying the ASIF surgical technique. The two instructions given were Illinois Pattern Jury Instructions, Civil, Nos. 105.01 and 105.02 (2d ed. 1971) (hereinafter cited as IPI Civil). Instruction No. 105.02 requires the use of "skill and care which reasonable well-qualified specialists in the same field, practicing in the same locality, or in similar localities, ordinarily would use in similar cases and circumstances." Plaintiff's tendered substitute instruction, which was rejected, omitted "practicing in the same locality, or in similar localities" (known as the "community standard"), and the entire following sentence: "A failure to do so is a form of negligence called malpractice."

Applicable IPI instructions shall be used unless they do not accu-

rately state the law. (87 Ill. 2d R. 239(a).) Plaintiff maintains that since ASIF is of international origin and standards, the community standard was not applicable and the instruction to the jury was prejudicial. The "community standard" measure of care has long been the law of this State. (*Schireson v. Walsh* (1933), 354 Ill. 40, 55-57, 187 N.E. 921, 927; *Bacon v. Walsh* (1913), 184 Ill. App. 377.) We have not been directed to any Illinois case law which departs from the community standard, although there are occasions when it may be supplemented. (See *Darling v. Charleston Community Memorial Hospital* (1964), 50 Ill. App. 2d 253, 333, 200 N.E.2d 149, 189, *aff'd* (1965), 33 Ill. 2d 326, 211 N.E.2d 253.) Rather, plaintiff argues that in modern medicine, at least in respect to specialists, there are no longer geographical distinctions in the standard of care to be applied. See 2 J. Dooley, Modern Tort Law sec. 34.44, at 431 (1977).

In the comment to IPI Civil No. 105.02 "Duty of Specialist," it is noted that the instruction is drafted to implement the "general rule" in the United States that "[a] doctor who holds himself out as a specialist in a particular branch of medicine is under a duty to possess and apply the knowledge, and to use the skill and care which reasonably well-qualified specialists practicing in the same branch of medicine have and use." (IPI Civil No. 105.02, Comment, at 322 (2d ed. 1971).) Therefore, if only international (or national) standards exist for the use of ASIF, then there will be no variance in standards among communities. In such situations, the "community standard" language becomes irrelevant, but hardly prejudicial to plaintiff. Indeed, in the comment to IPI Civil No. 105.01, the drafters noted the limited effect of the "community standard" in the context of modern medicine. IPI Civil No. 105.01, Comment, at 320 (2d ed 1971).

Plaintiff claims prejudice because defendant's expert was from the same community as defendant, and therefor the community standard language in the jury instruction tended to give extra weight to his testimony. However, both experts here testified that their opinions were predicated on "national" standards. Thus, while in the light of modern medical practice the supreme court may want to reconsider the appropriateness of the "community standard" in determining the level of care expected of medical specialists, we find that the instructions here were proper as given, and defendant was not prejudiced thereby.

Finally, plaintiff claims error in the verdict forms given to the jury. Two forms were used, IPI Civil Nos. A45.05 and A45.06, with a slight modification in the latter which is irrelevant here. Plaintiff submitted IPI Civil No. A45.09, which the trial court rejected, as a third

verdict form.

Again, applicable IPI instructions shall be used unless they do not accurately state the law. (87 Ill. 2d R. 239(a).) The adoption of comparative negligence in Illinois (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886) made necessary the drafting of jury instructions incorporating the principles enunciated in *Alvis*. The present case is apparently the first occasion a reviewing court has had to consider the propriety of the revised verdict forms. In *Alvis*, the supreme court expressed the belief "that the use of special verdicts and special interrogatories will serve as a guide to assist the jury in its deliberations." 85 Ill. 2d 1, 28, 421 N.E.2d 886, 898.

The drafters accommodated the supreme court and in the introduction to the new comparative negligence instructions it was said:

"While the Committee believes the form of general verdict presently in use is still appropriate (A45.09), it has drafted, *as an alternative*, a 'Modified General Verdict' Form (A45.06), to meet this suggestion of the Court." (Emphasis added.) (Illinois Pattern Jury Instructions, Civil, Introduction, at 5 (1981 supp.).)

The comment to IPI Civil No. A45.06 states in part:

"This modified form of general verdict should be used in cases where the court is desirous of learning the percentage of negligence attributed by the jury to the plaintiff. In all other cases the traditional form of general verdict may be used, IPI A45.09." (IPI Civil No. A45.06, Comment, at 38 (1981 Supp.).)

The trial court here elected to give the modified general verdict form (A45.06) and not the traditional general verdict form (A45.09) in accordance with the IPI comment.

■ Plaintiff contends that the traditional general verdict form should have been given as a third verdict form in order to provide the jury with the alternative of finding for the defendant without considering a comparative negligence computation. Verdict forms must be drawn to insure that they cover every possible finding under the evidence from the viewpoint of all parties. *In re Estate of Payton* (1979), 79 Ill. App. 3d 732, 398 N.E.2d 977; *Eggimann v. Wise* (1963), 41 Ill. App. 2d 471, 191 N.E.2d 425.

The beginning of IPI Civil No. A45.06 reads, "We, the jury, find for the plaintiff and against all of the defendant(s) and further find the following:" and there follows three sections. In the first part, plaintiff's damages are assessed without considering "damages due to the negligence of the plaintiff, *if any*." (Emphasis added.) In the second, the jury is to assess "the percentage of negligence that was a

proximate cause of plaintiff's [injury] [or] [damage] attributable solely to the plaintiff." Finally, the jury uses the first two results to determine plaintiff's recoverable damages.

Plaintiff contends that the wording of the second part of the form leaves the jury with the impression that they must find that plaintiff was guilty of some negligence. Also, in the facts here, since the verdict hinged on the credibility of the two parties, any implication tending to favor one party would bring about a total verdict in that party's favor. The complained-of verdict form begins just like the traditional verdict form with the jury finding for the plaintiff and against the defendant and then there are added the special findings. The first section refers to "negligence of the plaintiff, if any." Finally, there is nothing in the second section which precludes the jury from finding that zero (or anything that implies that a positive number must be found) percent of the negligence that was a proximate cause of plaintiff's injury is attributable solely to the plaintiff. We do not believe a jury considering this form would perceive any inference that would impel them to turn to the general verdict form finding for defendant. We find the giving of IPI Civil No. A45.06 appropriate whenever negligence on the part of the plaintiff is in issue, and there is no need to give IPI Civil No. A45.09.

Affirmed.

MILLS and GREEN, JJ., concur.