**FIRST NAT. BANK of OKTAHA v. JONES.**

No. 15223—Opinion Filed March 17, 1925.

Rehearing Denied July 14, 1925.

1. **Trial—Demurrer to Evidence and Direction of Verdict—When Improper.**

Where plaintiff's evidence will reasonably support a recovery in his favor, it is not error to overrule a demurrer thereto, nor to refuse a requested instruction directing a verdict against him.

2. **Appeal and Error—Harmless Error—Trial—Submission of Issues by Interrogatory Instead of General Form of Verdict.**

The Constitution (sec. 21, art. 7), and the statute (sec. 552, Comp. Stats. 1921), require that in all jury trials a general verdict shall be returned by the jury; but, where, in the trial of a jury case, the trial court submits to the jury an interrogatory which amounts to submitting the general issue of which party is entitled to recover, instead of submitting general forms of verdict for the jury's use, the fact that such interrogatory was submitted instead of general forms of verdict will not, alone, necessarily work a reversal of a judgment based upon the answers given by the jury to the interrogatory.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Muskogee County; E. A. Summers, Judge.

Action by C. Jones, as guardian of Lucy May Jones, a minor, against the First National Bank of Oktaha. Judgment for plaintiff, and defendant appeals. Affirmed.

Ezra Brainerd, Jr., and Charles P. Gotwals, for plaintiff in error.

V. V. Vernor, for defendant in error.

Opinion by SHACKELFORD, C. The plaintiff in error was the defendant below, and the defendant in error was the plaintiff. The parties will be designated herein as plaintiff and defendant, as they appeared in the trial court.

The cause was tried upon an amended petition. The plaintiff, after formal allegations of minority and guardianship of Lucy May Jones, alleged that the said minor is the owner of lands described as the east half of the northeast quarter of section 16, township 13 north, range 16 east; that on the 13th of September, 1920, the guardian C. Jones, entered into a written contract with the defendant by which he agreed to sell and the defendant to buy the cotton crop grown on the said land for the year 1920, the contract being as follows:

"The First National Bank"

"Oktaha. Oklahoma."

"This is to certify that I have this day contracted to pay C. Jones, 10c per pound for all his cotton crop grown this year on his farm E. ½ of N. E. ¼, sec. 16-13-16, to be delivered at Oktaha. This is for seed

cotton and must be clean picked. Dated this the 13th day of September, 1920.

"R. S. Williams, Cashier (Seal)."

'I hereby agree to the above sale and will pick and deliver all my crop of cotton now growing on the E. ½ of the N. E. ¼, sec. 16-13-16, to First National Bank of Oktaha, Oklahoma.

"C. Jones."

It is alleged that 32,090 pounds of cotton were produced and delivered as per the contract, to the defendant, and that a portion of the cotton belonged to the ward, Lucy May Jones, as her rents, amounting to one-fourth, or in money the sum of $802.50, none of which has been paid; demand has been made for payment and payment refused, and that the full sum of $802.50 is now due and owing. It is also alleged that the said sum is the reasonable market value of the ward's one-fourth of the cotton grown on her land for the year 1920. It is further alleged that the defendant well knew at the time the agreement was made that the land belonged to Lucy May Jones, and that one-fourth of the proceeds of the cotton belonged to her. Copy of the agreement is attached to the petition as an exhibit. Judgment is prayed for the sum of $802.50 with interest from and after January 1, 1921.

The defendant answered by general denial except that it is admitted that the agreement was made; and by a plea of payment in full. The defendant also pleads a former judgment in bar of the plaintiff's right to recover, the judgment having been entered in a case where C. Jones was plaintiff and the First National Bank of Oktaha was defendant. It is alleged that C. Jones, as plaintiff, brought action against this same defendant for the proceeds of the cotton crop delivered to defendant and in which was included the same money here sought to be recovered, and that plaintiff recovered a judgment against defendant for the full amount and the judgment has become final. Copies of the plaintiff's petition and the journal entry of judgment in the case referred to are attached as exhibits to the defendant's answer.

The plaintiff demurred to that portion of the defendant's answer which is a plea of payment; and to the subdivision of the answer which pleads the judgment as a bar to the plaintiff's right to recover. The court overruled the demurrer as to the plea of payment, and sustained the demurrer as to the other portion. The defendant excepted.

The cause was tried to a jury and at the close of the evidence the court submitted an interrogatory to the jury which was answered by the jury and the amount fixed which the jury found the plaintiff should recover. The interrogatory and the answers thereto given by the jury are as follows:

"Interrogatory: Has the defendant The First National Bank of Oktaha, Oklahoma, paid to the plaintiff all the rent money due her on the cotton in controversy herein, and if any balance is due her, how much. Answer: No—$162.00."

It is signed by ten jurors. Interest was calculated at 6% per annum from January 1, 1921, and judgment rendered for plaintiff and against the defendant for the aggregate amount, $190.60.

The defendant prosecutes appeal, and presents its assignments of error under the following propositions:

(1) The court erred in overruling the defendant's demurrer to the plaintiff's evidence, and in refusing to direct a verdict for the defendant on all the evidence.

(2) The court erred in refusing to instruct the jury generally upon the issues, and in submitting the interrogatory to the jury instead of submitting the cause to the jury for a general verdict.

We learn from the plaintiff's pleading that it is contended by the plaintiff that the sale of the cotton not only included the tenant's three-fourths of the cotton, but also the landowner's one-fourth interest, or the rent portion. Just what the contentions of the defendant bank were is not disclosed by the pleadings, but it appears from the defendant's evidence that the officers of the bank insisted they were contracting for the tenant's share of the cotton alone, and if the bank took the landowner's share of one-fourth the price would be the highest current market price. The evidence offered by the guardian of Lucy May Jones tends to show that under the contract he delivered to the defendant the entire cotton crop grown upon the land in 1920, amounting to 32.090 pounds; that the land belonged to his ward, Lucy May Jones, a fact which the officers of the defendant bank knew; and that the guardian had told the defendant's officers that he would be required to account to the landowner for one-fourth of the proceeds as rents for the use of the land; and that the contract covered all of the cotton, including the one-fourth going to the landowner; that the defendant's officers paid to the guardian a small amount of money as rents upon the first of the cotton delivered, but that the officers of the bank figured the rent portion of the cotton at the

market price, which was less than the contract price, when the rent portion should have been settled for at the contract price of ten cents per pound (seed cotton); that the guardian refused to accept any more rent money at the market price, but insisted that it should be paid for at the contract price; that the defendant never paid all of the rent due the landowner. The guardian testified that when he began picking cotton the officers of the bank said they would pay the contract price of ten cents per pound for the tenant's part, but would only pay the market price, which seems to have been something ,less, for the landowner's portion, the one-fourth as rent. The guardian testified that he was paid ten or twelve dollars out of two loads, and $15 out of another, as rents, amounting to $35 or $39 on the rents; and whatever balance of rents there were the bank kept. It is a mere matter of calculation to determine what was due on the rents if the plaintiff's construction of the contract is to be accepted. Plaintiff insisted that all of the cotton, including the rent, was to be paid for at the contract price of ten cents per pound. According to him the landowner was entitled to $802.25, less payments made, which at most aggregated $39, thus showing a balance of $763.25. This was the effect of the plaintiff's evidence upon the announcement of rest. It was not error to overrule the demurrer to the plaintiff's evidence.

We learn from the defendant's evidence that C. Jones (Charlie Jones) was greatly involved with the defendant bank, owing it several thousand dollars at the time he made the contract to sell his 1920 crop to the bank at ten cents per pound for seed cotton, and had agreed that the proceeds of the crop should be applied upon his indebtedness, Jones thinking, apparently, that if he could get such a price he could discharge his indebtedness. It seems that the bank officials knew or should have known that C. Jones did not own the land. but was due to account to the landowner for one-fourth of the cotton as rents. It must have been known to both C. Jones and the bank officials that C. Jones could not make a contract binding upon the landowner, to sell all the crop including the landowner's portion, or one-fourth, at any price with the understanding that the proceeds of all the crop should be applied upon the indebtedness of C. Jones. We learn that the defendant bank got the entire cotton crop, and the evidence tends to show that the bank advanced to C. Jones the sum of $626 to pay for picking of cotton and to apply upon the rents, and the sum of $238.90 was for rent and $387.10 was to pay for picking, and that the officials of the bank paid the rent portion of the crop to C. Jones on every load of cotton delivered at the highest market price, and besides the amount advanced for picking the balance was credited on C. Jones' obligation to the bank. The defendant introduced some checks which tended to show that $68.33 had been paid on rentals and the sum of $72 was paid for rent and picking. At the close of the evidence the defendant moved for a directed verdict. On the one hand the plaintiff had offered evidence tending to show that only $39 had been paid on the rents, leaving a balance in the landowner's favor, regardless of the construction to be placed upon the written agreement. On the other hand, the defendant's evidence tended to show that $238.90 had been paid on rents, and that this amount was all that was due as rents. Defendant's exhibits tended to show that much less of the rents had been paid. Two checks amounting to $72 were given for rents and picking and the other checks showed that $68.33 had been paid on rents and the oral testimony tended to show that $47.30 of the $72 above referred to was paid for rent. Thus we find $115.63 accounted for in the checks as rents. According to the defendant's oral testimony there was $238.90 rentals, and while the witness testified that it had all been paid, the checks tended to show that only $68.33 had been paid, and there was oral explanation as to the remaining part covered by the checks. The defendant's evidence tends to show that the $238.90 was agreed on between C. Jones, the guardian of Lucy May Jones, and one of the employes of the bank, as the rentals. It would seem that even if the one-fourth of the cotton belonging to the landowner was to be paid for at the market price there was still conflicting evidence as to whether the full amount had been paid. For that reason, if for none other, the court did not err in denying the request for an instructed verdict.

The defendant complains that the court refused to submit the case to the jury for a general verdict, but instead submitted an interrogatory for the jury to answer, and on the answer rendered a judgment. The interrogatory submitted, with the answers of the jury, is above quoted. The record shows that the defendant excepted to the submission of the interrogatory and requested general instructions. No general verdict was submitted to the jury for its use, unless the interrogatory can be treated as

such. The defendant points out that section 552, Comp. Stat. 1921, provides that "in all cases the jury shall render a general verdict." The Constitution, section 21, art. 7, also carries the provision that "in all jury trials the jury shall render a general verdict."

There seems to be no case from our own court where it has been held that the failure to submit a general verdict for the consideration of the jury would under any and all circumstances require a reversal of a judgment based upon the answers to an interrogatory. Perhaps the precise question has never been before the court. It seems that the language of the Constitution and of the statute is, in effect, mandatory. Then, unless the question submitted by the court can be construed to mean the submission of the general question of who should recover in the case, as would be the effect of a general verdict submitted to the jury, the judgment based upon the answers to the interrogatory should be reversed because of error in submitting the matter to the jury in the form of an interrogatory. We do not approve submitting the issues in the form of an interrogatory. The statute, however, does not prescribe any particular language or form in which the issue shall be submitted to the jury for its verdict. It has become a matter of general practice in cases like the one under consideration for the trial court to submit to the jury forms of verdict for its use, and we think this general practice should be adhered to by the trial courts. The question presented in the trial of this case is, in short, Which of the parties is entitled to judgment? Instead of submitting two forms of verdict to the jury for its use in making a return of its findings, the court submitted the interrogatory. In the interrogatory the jury is asked to say whether or not the defendant had paid all the rents due the landowner. To this part of the interrogatory the jury answered "no." In the interrogatory the jury is asked to say how much rents, if any, are unpaid, and to this part of the interrogatory the jury responded, "$162.00." It seems to us that this was so nearly equivalent to the jury saying, "We, the jury, find for the plaintiff and fix the amount of his recovery at $162," that it is in substantial compliance with the law which requires a general verdict to be returned by the jury. If the jury had answered the first part of the interrogatory in the affirmative, it would have been equivalent to saying, "We, the jury, find for the defendant." Thus we see that the interrogatory had the effect of submitting to

the jury the general issue of "which of the parties is entitled to recover," and is sufficient.

The court submitted to the jury the issues as to whether or not the contract covered the landowner's part of the cotton. It seems to us plain that the jury concluded from all the evidence that the landowner's cotton was not included in the agreement fixing the price of the cotton at ten cents per pound. We do not feel inclined to disagree with the jury about the matter. The written agreement did nothing except to bind C. Jones to sell and the bank to buy Jones' interest in the cotton and fixed a price of ten cents per pound for the cotton in the seed. While C. Jones was guardian of the landowner, his control of his ward's interest in the cotton was also under the supervision of the county court. It is certain that he had no power to sell her cotton and agree that the proceeds should be applied upon his individual obligations and if he had agreed that this should be done, such agreement would be void. It seems that Lucy May Jones' interest was figured at the high current market price. This she had a right to have if the price had gone up, and this was what she was entitled to when the market price went down. It is plain from this record that aside from the written agreement there was an understanding between C. Jones and the bank officials that the proceeds of his part of the cotton should be applied on his personal obligations to the bank. This was, no doubt, the reason for the bank officials agreeing to pay ten cents per pound for his seed cotton regardless of the market, and it seems from the record that this part of the understanding was carried out.

The court also submitted the question of whether or not the rent cotton had been paid for at the market price. C. Jones had testified that he had been paid $39 on the rents. The evidence tends to show that the rent part of the cotton at the market price was $238.90, which the bank officials said they had paid; but the bank introduced checks which tended to show that $68.83 was paid on the rents. The jury was evidently not satisfied with the defendant's evidence as to all of the balance of the payment of the rents. The jury fixed the amount of the unpaid rents at $162. The conclusion reached by the jury seems to be supported by the evidence.

The defendant complains that the court did not instruct the jury generally upon the issues. It seems from the record, however,

that the court did submit to the jury the issues made by the pleadings and the conflicting evidence, and in an instruction submitted the main issue as to whether all of the rents had been paid at the market price.

We find no error in the record requiring a reversal of the judgment. We recommend that the judgment be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 38 Cyc. pp. 1548, 1578. (2) 4 C. J. p. 1054, §3038.