CHRIS A. COLEMAN, Plaintiff-Appellant, *v.* DAVID J. HERMANN, Defendant-Appellee.

Second District   No. 82—740

Opinion filed July 21, 1983.

Gail A. Moreland, of Abbamonto, Szura & Binder, of Woodstock, for appellant.

Carolyn A. Brown, of Myron J. Hall, Ltd., of Waukegan, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The principal issue in this appeal is whether the failure to submit a general verdict form to the jury in a comparative negligence case invalidates its verdict. Plaintiff additionally urges that the verdict is against the manifest weight of the evidence and claims error in the direction of a verdict for the defendant on a count of wilful and wanton misconduct.

## THE VERDICT

The plaintiff tendered Illinois IPI general verdict forms (Illinois Pattern Jury Instruction (IPI), Civil, No. A45.09 (Supp. 1981)). The court refused these verdict forms and over a general objection by the plaintiff gave the following non-IPI verdict form tendered by the defendant:

"We, the Jury, find the following special verdict on the issues submitted to us:

Issue No. 1. Was the defendant negligent?

Answer 'yes' or 'no' by placing a mark in the appropriate box.

Answer: ☐ Yes ☐ No

If you have answered Issue 1 'yes', then answer the next issue.

Issue No. 2. Was the negligence of the Defendant a proximate cause of injury to the Plaintiff?

Answer 'yes' or 'no' by placing a mark in the appropriate box.

Answer: ☐ Yes ☐ No

If you have answered both Issue No. 1 and Issue No. 2 'yes', also answer the next issue.

Issue No. 3. Was the plaintiff negligent?

Answer 'yes' or 'no' by placing a mark in the appropriate box.

Answer: ☐ Yes ☐ No

If you have answered Issue No. 3 'yes', then answer the next issue.

Issue No. 4. Did the negligence of the Plaintiff contribute as a proximate cause to his injury?

Answer 'yes' or 'no' by placing a mark in the appropriate box.

Answer: ☐ Yes ☐ No

If you have answered both Issue No. 1 and Issue No. 2 'yes', then answer the next issue.

Issue No. 5. Without taking into consideration the question of reduction of damages due to the negligence of the Plaintiff, if any, what is the total amount of damages suffered by the Plaintiff as a proximate result of the occurrence in question?

Answer: $_____

If you have answered Issues 1, 2, 3 and 4 'yes', then answer the next issue.

Issue No. 6. Assuming that 100% represents the total combined negligence of the Plaintiff and of the Defendant whose negligence contributed as a proximate cause to Plaintiff's injury, what proportion of such combined negligence is attributable to the Plaintiff on the one hand and what proportion is attributable to the Defendant on the other hand?

Answer: To Plaintiff (0% to 100%)_____%
To Defendant (0% to 100%)_____%
(Signatures)."

The jury answered "No" to the first question and the trial court entered judgment for the defendant. It appears from the legend on the copy of the instruction in the record that it had been adapted from

Michigan and California pattern jury forms.

Section 2—1108 of the Code of Civil Procedure, formerly section 65 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 65), provides that "[u]nless the nature of the case requires otherwise, the jury shall render a general verdict." Ill. Rev. Stat. 1981, ch. 110, par. 2—1108.

Plaintiff argues that the form submitted to the jury was a special verdict, that this violated section 2—1108, and thus that the court's entry of judgment on this verdict cannot stand. We agree that the form employed was a special verdict form. In rendering a general verdict the jury determines the ultimate result of the case. (*Smith v. Gizzi* (Okla. 1977), 564 P.2d 1009, 1013; *Thorne v. Thorne* (Mo. 1961), 350 S.W.2d 754, 757.) By a special verdict, the jury, instead of finding for either party, finds and states all the facts at issue, and concludes conditionally that if, upon the whole matter thus found the court should be of the opinion that the plaintiff has a good cause of action, it then finds for the plaintiff and assesses damages, thus limiting itself to finding ultimate facts and leaving the law to the court. (*Crooks v. Sayles* (1963), 39 Ill. App. 2d 22, 28; *Chicago & Northwestern Ry. Co. v. Dunleavy* (1889), 129 Ill. 132, 142.) The verdict form here consists of a series of questions and ultimate fact issues without any opportunity for the jury to declare a holding one way or the other and thus at least in form the jury rendered a special and not a general verdict. Plaintiff contends, however, that the language, "[u]nless the nature of the case requires otherwise," applies to comparative negligence cases because by their nature they require juries to estimate the relative negligence of the parties and reduce plaintiff's damages accordingly, thus necessitating a special verdict.

It appears that the quoted language was added to the former section 65 because the provision in the Civil Practice Act of 1907 for a special verdict was deleted from the 1933 Civil Practice Act. This was viewed as having abolished the special verdict in Illinois. (Ill. Ann. Stat., ch. 110, par. 65, Committee Comments, at 251-52 (Smith-Hurd 1968).) The argument that the qualifying language, which was added in 1955, applies to all comparative negligence cases where plaintiff's negligence is in issue has been rejected by several recent appellate court opinions which found no error in the submission of a general verdict (IPI Civil No. A45.09) or a modified general verdict (IPI Civil Nos. A45.07, A45.08). See *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 709; *Stromquist v. Burlington Northern, Inc.* (1983), 112 Ill. App. 3d 37, 45; *Hunter v. Sukkar* (1982), 111 Ill. App. 3d 169, 177.

We have found no Illinois cases, however, which decide the issue before us: whether the refusal to submit a general verdict or a modified general verdict form in a comparative negligence case is error. Nor have we found any Illinois case explaining the import of the language "[u]nless the nature of the case requires otherwise."

The defendant argues that *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 28, impliedly fit comparative negligence within the qualifying language of section 2—1108 when it stated that "the use of special verdicts and special interrogatories will serve as a guide to assist the jury in its deliberations." The court in *Alvis*, in our view, was merely responding to the arguments that the doctrine of comparative negligence was unworkable because juries are incapable of apportioning fault scientifically. It is not authority that comparative negligence requires dispensing with otherwise mandatory general verdicts. Generally, the availability of special interrogatories and modified general verdicts would appear to sufficiently supplement the use of a general verdict in a comparative negligence case, without dispensing with the general verdict. Any ambiguity in the jury's apportionment of fault and consequential reduction of damage can be avoided by the submission of special interrogatories and/or the modified general verdict form. (See, *e.g., Hunter v. Sukkar* (1982), 111 Ill. App. 3d 169, 178.) Moreover, the supreme court in *Alvis*, if it had intended to require special verdicts in comparative negligence cases, presumably would have said so directly as it had before it the examples of opinions in Michigan and Florida to follow in which the form of verdict was provided in the opinion. See *Placek v. City of Sterling Heights* (1979), 405 Mich. 638, 663-64, 275 N.W.2d 511, 520; *Hoffman v. Jones* (Fla. 1973), 280 So. 2d 431, 439.

We would agree that the qualifying language of section 2—1108 must be given some meaning and does not entirely rule out special verdicts if the nature of the particular case, whether sounding in comparative negligence or otherwise, requires something other than a general verdict to achieve just results.

The qualifying language appears to be unique to Illinois. Other jurisdictions, however, have dealt with the general problem of verdicts in unusually complicated cases. Essentially, cases from jurisdictions which allow special verdicts explain that special verdicts are preferable, although not necessarily mandatory, in cases that are unusually complex factually or require application of difficult or especially subtle legal principles to the facts. Under such circumstances a general verdict might well amount to an invitation to an arbitrary or unsoundly based decision because the jury would simply have too much to han-

dle. Thus, in a case involving complex principles of indemnity law as well as negligence of various sorts, a Federal district court gave a special verdict form to the jury, rather than go through a long series of involved instructions on the applicable legal principles which it would have had to do if it had submitted a general verdict. On post-trial review this procedure was upheld, the court commenting:

> "Faced with all these principles which would have to be explained to the jury, were general verdicts to be asked of them in both these cases, the court concluded that any such complex general charge would inevitably give the jurors such an attack of intellectual indigestion that their verdicts could not possibly be based understandingly on the principles of law involved, and that injustice was accordingly only too apt to result." *Flusk v. Erie R. Co.* (D.N.J. 1953), 110 F. Supp. 118, 121.

(See also *Thibault v. Sears, Roebuck & Co.* (1978), 118 N.H. 802, 813, 395 A.2d 843, 850; *Harless v. First National Bank* (W. Va. 1882), 289 S.E.2d 692, 698; *Envirex, Inc. v. Ecological Recovery Associates, Inc.* (M.D. Pa. 1978), 454 F. Supp. 1329, 1339-40; *Dixon v. Stewart* (Utah 1982), 658 P.2d 591, 593-94.) We view the import of the qualifying language to give the trial judge some measure of discretion to use a special verdict form in an appropriate case, but we do not believe that it supports the position of the defendant in this case. The case before us is not complex, legally subtle or multipartied so as to require a special verdict; it involves one plaintiff, one defendant, one theory of liability and it appears from the facts to be the usual negligence case.

■ We conclude that the trial court erred in giving the special verdict form to the jury, but this does not end our inquiry. Whether there is reversible error in submitting the case to the jury on the form used must also be considered.

In a number of cases decided in other jurisdictions which require a general verdict by statute or rule, circumstances have been found to sustain judgments founded on special verdicts when they are substantially equivalent to general verdicts.

Thus, although Oklahoma requires a general verdict by statute and constitution, nonetheless several cases have held that reversal is not required because the case is submitted to the jury on a special verdict. (*First National Bank v. Jones* (1925), 111 Okla. 116, 119, 238 P. 488, 490.) In *Jones*, the trial court refused to submit a general verdict. The case went to the jury on an interrogatory which in substance asked whether the bank had paid the plaintiff all the rent money due her on the cotton in controversy and if any balance was due, if so how much. The answer of the jury was "No; $162." The

Oklahoma Supreme Court held that the interrogatory was "so nearly equivalent" to the jury saying that they find for the plaintiff and fix the amount of his recovery at a figure that it was in substantial compliance with the law which required a general verdict. The court also noted that if the jury had answered the part of the interrogatory in the affirmative it would have been equivalent to saying that the jury finds for the defendant, thus that the interrogatory had the effect of submitting to the jury the general issue of which party was entitled to recover. See also *American Employers' Insurance Co. v. McGeehee* (Okla. 1971), 485 P.2d 754, 756 (interrogatory amounted to general verdict form since it contained the only issue of fact to be determined and its answer was equivalent to a general verdict); similarly, see *Latting v. Siddons* (1937), 179 Okla. 582, 583, 66 P.2d 923, 924; *Edwards v. Rutland Savings Bank* (1938), 181 Okla. 643, 644, 75 P.2d 1152, 1153; *Vaught v. Holland* (Okla. 1976), 554 P.2d 1174, 1176-77.

*Dessauer v. Memorial General Hospital* (N.M. App. 1981), 96 N.M. 92, 96, 628 P.2d 337, 341, has some factual similarity to the case before us. In *Dessauer*, general verdict forms submitted by the doctor and nurse in connection with their indemnity suit against a doctor were refused because not in the proper form. Interrogatories went to the jury including one which asked whether the doctor was negligent and which the jury answered "No." Although the New Mexico rules of civil procedure require general verdicts, a judgment was upheld, the court noting that findings of fact and answers to interrogatories do not dispense with a general verdict in the usual case. If they affirmatively show the existence of every fact necessary to entitle plaintiff to recovery and the nonexistence of every defense or if they show as a matter of law that a valid defense has been established by the evidence they may constitute a general verdict. See also *Kath v. Kath* (1952), 238 Minn. 120, 123, 55 N.W.2d 691, 693.

Here, what was designated as a "special verdict" asked as issue No. 1 "[w]as the defendant negligent?" and the jury answered "No." The other issues submitted on the "verdict" form were not required to be answered unless the first issue had been answered "Yes." We conclude that the answer to the first interrogatory constituted, in substance, a general verdict that the defendant was not negligent, which essentially was a general verdict finding on an issue dispositive of the case.

In addition, although the trial court submitted what was plainly a special verdict form to the jury, it also gave the jury several instructions which would normally go with a general verdict since they instructed the jury how to apply the law to the ultimate fact findings

and thus return a verdict "for the plaintiff" or "for the defendant." Plaintiff's instruction No. 2 (IPI Civil No. 21.02) instructed the jury as to the burden of proof and the elements to be proved, and told it that if proved the verdict should be for the plaintiff or if not proved the verdict should be for the defendant. The jury was similarly instructed by plaintiff's instruction No. 11 (IPI Civil No. A21.02). By plaintiff's instruction No. 16 the jury was also told how to apportion damages if the plaintiff's injury was proximately caused by a combination of negligence of the defendant and contributory negligence of the plaintiff. (IPI Civil No. A45.05.) Defendant's instruction No. 3 also instructed on the theory of comparative negligence (IPI Civil No. A10.03). By these instructions the jury knew the legal effect of its answers as it was informed as to what the result would be if it found certain ultimate facts or combinations of facts. At a minimum it was clear that the jury knew, because it was told, that a finding that defendant was not negligent would mean no recovery for the plaintiff. *Cf. Sangster v. Van Hecke* (1977), 67 Ill. 2d 96, 101 (citing Oklahoma and Minnesota cases holding that submissions on special interrogatories which called upon the jury to dispose of the fact issues necessary for judgment were in substance general verdicts upon which judgments could be entered, and also emphasizing the role of instructions in making the intent of the jury clear).

Plaintiff alleges no prejudice from the use of the special verdict form. His speculative argument that the jury may be tempted to forego the difficult balancing of negligence and simply find the defendant not negligent, ending the matter there, appears to be no less true with a general verdict. Since the jury was extensively instructed on applying the law to the facts to reach its ultimate result we find no deprivation of a right to a jury trial in the submission of what was, in form, a special verdict but in substance, a general verdict.

## Manifest Weight

On November 3, 1978, at 7 or 7:30 p.m., plaintiff was driving eastbound on Route 20 in McHenry County. Route 20 is a flat rural two-lane solid blacktop highway with gravel shoulders. As plaintiff drove east on Route 20 the car in front of him collided with a deer that had started to cross the road. The deer came over the top of that car and landed in the middle of the road, lying, according to plaintiff, north-south across the center line. Plaintiff braked and stopped his car some 15 feet east of the deer. Plaintiff started to walk to the center of the road, saw defendant's car when it was about 15 feet away,

and was struck in the leg and injured. The jury could have found from the evidence that the scene of the accident was very dark, that plaintiff was wearing dark clothing, that defendant had good reason to be focusing on his own lane of traffic seeking to get around a deer and around an individual who had come from the other side of the road and was pulling the deer off, that plaintiff darted into the roadway suddenly, almost as defendant came upon the deer, that the defendant did not swerve substantially over the center line, and that, in general, defendant was not negligent because he failed to see or look for a pedestrian who suddenly and unexpectedly darted into the roadway. (See *Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127, 145; *McCullough v. McTavish* (1978), 62 Ill. App. 3d 1041, 1047.) The jury could conclude that defendant could not necessarily be expected to anticipate the actions of the plaintiff and therefore should not be held negligent. (*Piechalak v. Liberty Trucking Co.* (1965), 58 Ill. App. 2d 289, 296-97.) The jury's fact determination will be reversed only if against the manifest weight of the evidence, that is, only if an opposite conclusion is clearly evident. (*Gettemy v. Grgula* (1975), 25 Ill. App. 3d 625, 628.) We conclude from the whole record that the jury's fact determination was not against the manifest weight of the evidence.

### DIRECTED VERDICT, WILFUL AND WANTON COUNT

Plaintiff's final argument is that the trial court should not have directed a verdict on the wilful and wanton misconduct count of the complaint. He argues that the jury could have reached a supportable verdict in his favor on this issue because there was evidence that the defendant was reckless in not discovering or anticipating the danger that arose from his swerving into the eastbound lane and in failing to keep a lookout for pedestrians or other automobiles. Wilful and wanton conduct has been defined as "an intentional or reckless disregard for the safety of others." (*Mantia v. Kaminski* (1980), 89 Ill. App. 3d 932, 936.) It may include a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. (*Hering v. Hilton* (1958), 12 Ill. 2d 559, 562.) Failure to keep a proper lookout may amount to wilful and wanton misconduct under certain circumstances. (*Koch v. Lemmerman* (1956), 12 Ill. App. 2d 237, 241.) A verdict, however, should be directed only when all of the evidence, viewed in the light most favorable to the party against whom the verdict is to be directed, so overwhelmingly favors the moving party that

no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

The evidence, seen most favorably for plaintiff, indicates that plaintiff was wearing light clothing and was visible to defendant, who, upon sighting the dead deer, swerved several feet into the eastbound lane after reducing his speed somewhat in attempting to brake. Defendant did not see plaintiff until very shortly before the accident; it is unclear how long before the accident plaintiff was in the roadway, but plaintiff himself stated that he was only about five feet from the side of the road when he saw the lights from defendant's car, that he took only a couple of rapid strides into the roadway before the collision, that the deer was hit at most about a minute and a half before the defendant drove along, and that the defendant had to consider the presence of the deer and a second pedestrian as well as the plaintiff.

■ We conclude that the directed verdict was proper. Defendant's speed was not grossly excessive, and he did not act in heedless disregard of the danger of excessive speed. See *Thomas v. Price* (1980), 81 Ill. App. 3d 542, 544-45.

The judgement is affirmed.

Affirmed.

UNVERZAGT and HOPF, JJ., concur.