CONTACT LENSES UNLIMITED, INC., Plaintiff, v. CARL R. JOHNSON *et al.*, Defendants (Belle Goldstrich *et al.*, Third–Party Plaintiffs-Appellants; Hallmark & Johnson Properties, Ltd., Third–Party Defendant-Appellee).

First District (2nd Division)   No. 87—2468

Opinion filed November 22, 1988.

Alan P. Solow, Pamela McLean Meyerson, and Amy L. Bess, all of Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., of Chicago, for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (William G. Swindal, Stephen R. Swofford, and Kearney W. Kilens, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Third-party plaintiffs appeal the dismissal of their complaint seeking indemnity based upon an express indemnity agreement and on an agent-principal relationship, arguing that the trial court erred in ruling that they were seeking tort rather than contract damages.

Third-party defendants Hallmark & Johnson (Hallmark) manage a building owned by third-party plaintiffs (the Owners). Plaintiff Contact Lenses Unlimited, Inc. (Contact), a tenant in the building, had a lease which granted it "[t]he exclusive right to sell and service contact eye lenses in Lessor's building." Contact brought suit against both Hallmark and the Owners, alleging that the Owners, acting through Hallmark, breached this exclusivity provision in its lease by granting one to another tenant, For Eyes Optical Company, and by permitting For Eyes to sell and service contact eye lenses. The Owners then filed a third-party action against Hallmark, seeking relief from Hallmark in the event that the Owners were found liable to Contact in the underlying action, and alleging in their fourth amended third-party complaint the following:

> Hallmark & Johnson has asserted that it performed its management duties to the Owners pursuant to a management agreement dated September 12, 1968.
>
> The management agreement provides, in part, that "The Agent also shall not be liable for any error of judgment or for any mistake of fact of [*sic*] law, or for anything which it may do or refrain from doing hereinafter, except in cases of willful

misconduct or gross negligence."

Hallmark & Johnson entered into the leases with Contact Lenses and For Eyes without consulting with or seeking the approval of the Owners, in violation of the management agreement.

Hallmark & Johnson knowingly ignored the exclusivity provision in Contact Lenses' lease, in conscious disregard for the rights of Contact Lenses.

Hallmark & Johnson's conduct constituted willful misconduct and gross negligence, thereby violating the express provisions of the management agreement.

The trial court dismissed the third-party complaint, holding that it was deficient because it attempted to assert tort liability in a breach of contract case, and stating:

"A reading of the whole paragraph, it's clear to me that the intention of the parties deals with something relating to property damage and personal injury; namely, tort. The whole gist of that paragraph deals with tort. To use the phrase 'willful misconduct' or 'gross negligence' in the context of a contractual purported cause of action, it seems to me it's just not proper at all.

\* \* \*

\*\*\* [I]n reading the complaint, the fourth amended third-party complaint, it's clear to the Court that the thrust of that cause of action is \*\*\* for economic damages, economic losses, is [*sic*] exactly what is being prayed for.

\* \* \*

You are pleading a contract cause of action, and you can't plead a willful and wanton breach of a contract. That's all there is to it."

OPINION

The contract provision at issue provides as follows:

"The Owner further agrees: (a) To save the Agent harmless from all damage suits in connection with the management of the herein described property and from liability suffered by any employee or other person whomsoever, and to carry, at his own expense, necessary public liability and workmen's compensation insurance, adequate to protect the interests of the parties hereto, which policies shall be so written as to protect the Agent in the same manner and to the same extent they protect the Owner, and will name the Agent as co-insured. The Agent

shall also not be liable for any error of judgment or for any mistake of fact of [*sic*] law, or for anything which it may do or refrain from doing hereinafter, except in cases of willful misconduct or gross negligence."

The Owners contend that they pleaded facts constituting willful misconduct and gross negligence, conduct for which Hallmark expressly agreed to be held liable, thus properly bringing their claim within the contractual indemnity limitation. They also claim that they have stated a cause of action for breach of contract by alleging that Hallmark failed to use due diligence in the management of the building and failed to obtain their approval of the subject leases, in violation of the management agreement. Hallmark responds that the applicable contract provision precludes liability for a breach of contract action seeking recovery for solely economic loss. It also maintains that theories of willful misconduct and gross negligence are confined to tort actions. See *Coleman v. Hermann* (1983), 116 Ill. App. 3d 448, 457, 452 N.E.2d 620; *Mantia v. Kaminski* (1980), 89 Ill. App. 3d 932, 936, 412 N.E.2d 651 ("Wilful and wanton conduct has been defined as 'an intentional or reckless disregard for the safety of others' ").

The trial judge relied on *Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, in dismissing the Owners' complaint. In that case, plaintiffs, purchasers of townhouses designed, constructed and sold by defendants, sought damages for breaches of express warranty and an implied warranty of habitability, as well as punitive damages for willful and wanton misconduct. The trial court dismissed the willful and wanton misconduct counts but was reversed by the appellate court. The supreme court affirmed the dismissal, stating:

> "Both defendants and plaintiffs agree that under Illinois law counts VIII through XI must be construed as alleging a tort in order to properly state a cause of action for punitive damages.
>
> * * *
>
> The line of demarcation between tort and contract is sometimes difficult to make, and occasionally, the conduct complained of can constitute both a breach of contract and a tort. [Citations.] Nevertheless, this court held in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, that recovery for solely economic losses is more appropriately governed by contract, rather than tort, law principles.
>
> * * *
>
> ***[I]n the present case, plaintiffs seek to recover only the costs of repairs to their homes caused by defendants' alleged faulty workmanship. Like the plaintiff in *Redarowicz*, the plain-

tiffs here have not alleged a harm 'above and beyond disappointed expectations.' (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 177.) \*\*\* [T]he plaintiffs essentially are complaining that they did not receive the benefit of their bargain—a harm which is appropriately remedied by bringing an action for breach of contract.

\*\*\* Simply characterizing a breach of contract as 'wilful and wanton' does not change the fact that plaintiffs are only seeking recovery for harm to a contract-like interest. We cannot agree that a breach of contract becomes a tort just because the breach was wilful and wanton." 112 Ill. 2d at 94, 96, 97-98.

The Owners contend that *Morrow* is distinguishable from the instant case and therefore does not apply, maintaining that they did not attempt "to couch a breach of contract action in the language of tort" and that they used language of willful and wanton misconduct and gross negligence merely because that is the language used in the management agreement which Hallmark allegedly breached.

At issue is the proper interpretation of section 4(a) of the management agreement, which provides, as previously noted, that "The Agent shall also not be liable for any error of judgment or for any mistake of fact of [*sic*] law, or for anything which it may do or refrain from doing hereinafter, except in cases of willful misconduct or gross negligence." Hallmark claims that this clause means that it will be held liable for only its intentional torts and that it has immunity from all other claims. The Owners contend that all other provisions of the management agreement are meaningless and Hallmark's duties under the agreement are only illusory if section 4(a) does provide Hallmark with immunity. They maintain that the clause applies only in a third-party personal injury action and has no applicability in a breach of contract case.

■ It is well settled that a contract should be construed as a whole to give effect to the intention of the parties, and should also be construed so as to make the obligations imposed by its terms mutually binding upon the parties, unless such a construction is wholly negated by the language used. (*De Witt County Building Comm'n v. City of De Witt* (1984), 128 Ill. App. 3d 11, 18, 469 N.E.2d 689.) Contract terms should be construed to avoid the conclusion that other terms are redundant or meaningless. (*De Witt,* 128 Ill. App. 3d at 18.) Courts will give a reasonable construction to contracts rather than one leading to absurd results, and a construction is favored which will be most equitable to both parties, instead of one which will give one party an unfair advantage over the other. *Board of Education v. Chi-*

880

*cago Teachers Union, Local 1* (1980), 89 Ill. App. 3d 861, 869, 412 N.E.2d 587.

■■ We agree with the trial judge that section 4(a) of the management agreement relates to torts, but we hold that at the same time it does not preclude a contract action. There would be no purpose for including, for example, the requirements that Hallmark use due diligence and secure approval of leases if it could ignore those provisions with no penalty. Construing section 4(a) as Hallmark suggests would render the other provisions meaningless and make the contract unfair, a result that could not have been within the contemplation of the parties when they entered into this agreement.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and this cause is remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

HARTMAN, P.J., and BILANDIC, J., concur.