(No. 96805.—)

# JEWELERS MUTUAL INSURANCE COMPANY et al., Appellees, v. FIRSTAR BANK ILLINOIS, Appellant.

*Opinion filed November 18, 2004.*

Hinshaw & Culbertson, L.L.P., of Chicago (Lawrence R. Moelmann, Stephen R. Swofford and Clifford E. Yuknis, of counsel), for appellant.

Wolin & Rosen, Ltd., of Chicago (Charles R. Franklin and Michael E. Pildes, of counsel), for appellee Bachu Vaidya.

Robert Ostojic, of Leahy, Eisenberg & Frankel, Ltd., of Chicago, for appellee Jewelers Mutual Insurance Co.

JUSTICE THOMAS delivered the opinion of the court:

At issue is whether the exculpatory clause in defendant Firstar Bank's safety deposit box rental agreement is enforceable under the facts of this case. We hold that it is not.

## BACKGROUND

More than $1 million worth of loose diamonds and jewelry was stolen from three safety deposit boxes that defendant leased to jewel dealers at one of its Chicago branches. The safety deposit box lease agreements provided that the relationship of the parties was that of landlord and tenant, not bailor and bailee. Additionally, the agreement contained the following paragraph:

"1. It is understood that said bank has no possession or custody of, nor control over, the contents of said safe and that the lessee assumes all risks in connection with the depositing of such contents, that the sum mentioned is for the rental of said safe alone, and that there shall be no liability on the part of said bank, for loss of, or injury to, the contents of said box from any cause whatever unless lessee and said bank enter into a special agreement in writing to that effect, in which case such additional charges shall be made by said bank as the value of contents of said safe, and the liability assumed on account thereof may justify. The liability of said bank is limited to the exercise of

ordinary care to prevent the opening of said safe by any person not authorized and such opening by any person not authorized shall not be inferable from loss of any of its contents."

None of the dealers had entered into the "special agreement" referenced in the first sentence of this paragraph (hereinafter, the exculpatory clause). Two of the dealers, Annaco Corporation and Irving M. Ringel, Inc., had the contents of their boxes insured by plaintiff Jewelers Mutual Insurance Company. The third dealer, Bachu Vaidya, did not have the contents insured. Jewelers Mutual paid losses totaling $887,400.37 to its two insureds, and then brought a subrogation action against defendant in the circuit court of Cook County. The complaint alleged breach of contract and negligence. Vaidya sued defendant directly in a separate action and sought recovery under the same theories. In its answer in both cases, defendant admitted that it had been negligent in one or more of the respects alleged by plaintiffs and that it had breached the agreement in one or more of the respects alleged by plaintiffs.

Relying on the exculpatory clause, defendant moved for and was granted summary judgment in both cases. In Vaidya's case, the court dismissed the negligence count based on *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 88-89 (1982). Although that issue was also raised by defendant in the other case, the trial court made no specific findings on that issue. Plaintiffs appealed, and the two cases were consolidated.

The appellate court affirmed the dismissal of the negligence count in Vaidya's case, holding that the negligence count was barred by *Moorman*. 341 Ill. App. 3d 14, 22. However, the court reversed the summary judgment in favor of defendant in both cases on the breach of contract counts, holding that the exculpatory clause was unenforceable. The court gave two reasons for finding the clause unenforceable. First, that the contract was

ambiguous because the first sentence of paragraph one provided that "there shall be no liability," while the second sentence said that the "liability of said bank is limited to the exercise of ordinary care." 341 Ill. App. 3d at 18. The court held that the ambiguity had to be resolved against defendant because it drafted the contract. 341 Ill. App. 3d at 18. Next, the court held that, because the parties had defined their relationship as landlord and tenant, they subjected their relationship to the Landlord and Tenant Act (765 ILCS 705/.01 *et seq.* (West 2002)). The Act provides that exculpatory clauses that excuse a landlord from liability for his own negligence are void as against public policy. 765 ILCS 705/1 (West 2002). The court rejected defendant's argument that the Act did not apply because a lease of a safety deposit box is not a lease of "real property." The court held that the boxes were fixtures to real property, and that therefore the Act applied. 341 Ill. App. 3d at 20. The court stated that defendant had admitted that-it allowed unauthorized access to the safety deposit boxes in both cases, and therefore the court granted in part Jewelers Mutual's motion for summary judgment and directed the entry of partial summary judgment for Vaidya. The court remanded for proof of damages. 341 Ill. App. 3d at 23.

Presiding Justice McBride dissented from the reversal of summary judgment for defendant. She disagreed with the majority's conclusion that the contract was ambiguous. She believed that the two sentences in paragraph one could be reconciled by reading the second sentence as referring to the "special agreement" mentioned in the first sentence. 341 Ill. App. 3d at 27 (McBride, P.J., concurring in part and dissenting in part). In other words, the paragraph means that defendant has no liability for any loss whatsoever, unless the parties enter into the special agreement referenced in the first sentence. If they do, then defendant's liability is limited

to the exercise of ordinary care to prevent unauthorized access to the box. 341 Ill. App. 3d at 27 (McBride, P.J., concurring in part and dissenting in part). Additionally, Presiding Justice McBride disagreed with the majority's conclusion about the Landlord and Tenant Act. She argued that the lease was for personal property rather than real property, and that the parties had not subjected themselves to the Act merely by defining their relationship as landlord and tenant. 341 Ill. App. 3d at 24 (McBride, P.J., concurring in part and dissenting in part). Finally, she did not believe that the exculpatory clause was void as against public policy because safety deposit companies are not generally insurers of the safety of the box contents. 341 Ill. App. 3d at 27 (McBride, P.J., concurring in part and dissenting in part). We allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

Summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002). We review summary judgment orders *de novo*. *Roth v. Opiela*, 211 Ill. 2d 536, 542 (2004).

Defendant first argues that the court erred in finding paragraph one ambiguous. According to defendant, although this provision could have been drafted better, its meaning is clear. Defendant contends that the word "liability" is used two different ways in the first and second sentences. In the first sentence, it refers to the amount of damages for which defendant can be held responsible. In the second sentence, the word "liability" addresses the standard of care. Thus, the second sentence means that defendant has a duty to exercise ordinary care to prevent the unauthorized opening of the box, but

the first sentence limits the amount of damages that can be collected for a breach of that duty. At oral argument, defendant clarified that its position was that the only damages that a customer could recover if defendant breaches its duty of care would be a return of the rental fee. Defendant argues that this interpretation takes into account the commercial setting in which the parties contracted and also fairly allocates the liability to the party who elected to bear the risk of loss. Here, none of the parties entered into the special agreement referenced in the first sentence to insure the contents of the box. Defendant argues that Annaco Corporation and Irving M. Ringel, Inc., insured the contents of the boxes with Jewelers Mutual and thus elected that Jewelers Mutual would bear the risk of loss. Vaidya did not purchase insurance and thus chose to bear the risk of loss himself.

We disagree with defendant's argument. First, the first sentence of paragraph one is simply not a limitation of damages clause. That sentence provides that the customer assumes all risks of depositing the contents of the box with defendant and that there "shall be no liability on the part of said bank, for loss of, or injury to, the contents of said box from any cause whatever." The clause does not say that, in the event of a breach, the plaintiff's damages are limited to a return of the rental fee. Rather, it is a general exculpatory clause purporting to exculpate defendant from all liability for loss of or damage to the contents of the box. In the very next sentence, however, defendant assumes one particular liability: it must exercise ordinary care to prevent the unauthorized opening of the box. We do not believe that the clauses can be reconciled in the manner suggested by defendant.

Further, defendant's invocation of insurance law "risk of loss" concepts is a red herring. The issue in this case is not a dispute between insurance companies over

who bore the risk of loss. The issues are whether defendant breached the contract it entered into with plaintiffs and whether defendant can exculpate itself from all liability for breach of an express obligation assumed in the contract.

The construction placed on paragraph one by the dissenting justice in the appellate court must also be rejected. The dissent argued that the second sentence referred to defendant's liability in the event that the parties entered into the "special agreement" listed in clause one. This obviously cannot be the case because the first sentence provides, in part, that there is "no liability on the part of said bank, for loss of, or injury to, the contents of said box from any cause whatever unless lessee and said bank enter into a special agreement in writing *to that effect*." (Emphasis added.) In other words, there is no liability for loss of or injury to the contents of the box from any cause whatsoever unless the parties enter into an agreement that there *will be* liability on the part of the bank for loss of, or injury to, the contents of the box from any cause whatsoever. If the parties entered into such an agreement, defendant's liability would *not* be limited to a failure to exercise ordinary care to keep unauthorized persons out of the box. Rather, defendant would become a general insurer of the contents of the box. Thus, the two sentences cannot be reconciled in the manner suggested by the appellate court dissent.

We believe that paragraph one of the lease agreement is ambiguous and that its two sentences are conflicting. In the first sentence, defendant disclaims liability for any loss whatsoever. In the second sentence, defendant assumes one particular liability. It must exercise ordinary care to prevent unauthorized persons from accessing the box. Defendant argues that, if we find this paragraph ambiguous, then the resolution of its meaning is a question of fact and the case cannot be decided on a motion

for summary judgment. See *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991). Defendant thus contends that, if we find an ambiguity, we must remand the case to the fact finder to resolve the ambiguity. We disagree.

Whatever the meaning of the exculpatory clause, it clearly cannot be applied to a situation in which defendant is alleged to have breached its duty to exercise ordinary care to prevent unauthorized persons from opening the box. This is a specific duty that defendant assumed in the contract, and it formed the heart of the parties' agreement. A party cannot promise to act in a certain manner in one portion of a contract and then exculpate itself from liability for breach of that very promise in another part of the contract. See, *e.g.*, *Shorr Paper Products, Inc. v. Aurora Elevator, Inc.*, 198 Ill. App. 3d 9, 13-14 (1990) (criticizing the defendant for focusing solely on exculpatory provision of contract to the exclusion of its specifically articulated obligations, noting that such an interpretation would render defendant's contractual duties illusory); *Contact Lenses Unlimited, Inc. v. Johnson*, 176 Ill. App. 3d 875, 879-80 (1988) (holding that contractual requirements imposed upon the defendant would be meaningless if the defendant could ignore those provisions with no penalty). Here, plaintiffs have received nothing in return for their rental fee if they cannot hold defendant to its contractual obligation to exercise ordinary care to prevent unauthorized persons from accessing their safety deposit boxes.

This same conclusion was reached by the Florida District Court of Appeal in *Sniffen v. Century National Bank of Broward*, 375 So. 2d 892 (Fla. App. 1979). In that case, the safety deposit box rental agreement was similar to the one here in that it contained two conflicting provisions. One was a general, broad exculpatory clause denying liability for any loss: "It is expressly

understood ... that in making this lease the Bank does not assume the relation and duty of bailee and shall not be liable for loss or damage to, the contents of said box, caused by burglary, fire or any cause whatsoever, but that the entire risk of such of loss or damage is assumed by the lessee." *Sniffen*, 375 So. 2d at 893. In the second provision, the bank assumed a duty to prevent unauthorized access: "No person other than the renter or approved deputy named in the books of Bank ... shall have access to the safe." *Sniffen*, 375 So. 2d at 893. The plaintiff alleged that the bank breached this agreement when it allowed an authorized person, his ex-wife, to access his safety deposit box. She removed over $250,000 worth of bearer bonds and other valuables. The trial judge dismissed the complaint on the ground that the exculpatory clause barred plaintiff's action. *Sniffen*, 375 So. 2d at 893.

The Florida District Court of Appeal reversed, holding that, "[w]hatever the possible effect of the exculpatory clause in other situations *** it is clear that it cannot be employed, as it was below, to negate the specific contractual undertaking to restrict access to the vault." *Sniffen*, 375 So. 2d at 893. The court cited *Ivey Plants, Inc. v. FMC Corp.*, 282 So. 2d 205, 208 (Fla. App. 1973), for the proposition that an exculpatory clause cannot be applied to defeat a breach of contract action based on a breach of a specific contractual obligation. If such was the case, then the contract would be lacking in mutuality of obligation, mutuality of remedy, and would be unenforceable. *Sniffen*, 375 So. 2d at 893. The *Sniffen* court further elaborated on how this principle applies to safety deposit box rental agreements:

"It should be emphasized that, as the court noted in *Ivey Plants*, an acceptance of the bank's position in this case would render the agreement between the parties entirely nugatory. If a safety deposit customer cannot enforce the bank's undertaking to preclude unauthorized

persons from entry to his box which is the very heart of the relationship and the only real reason that such a facility is used at all, see 5 Fla. Jur. 2d Banks and Banking, § 139 (1978)—it is obvious that he will have received nothing whatever in return for his rental fee. The authorities are unanimous in indicating that no such drastic effect may properly be attributed to contractual provisions such as those involved here." *Sniffen*, 375 So. 2d at 893-94.

We agree with the *Sniffen* court's analysis. In this contract, in exchange for plaintiff's rental fee, defendant assumed the obligation to exercise ordinary care to prevent unauthorized access to the safety deposit box. Having assumed this duty, defendant cannot exculpate itself from liability for a breach of that duty. Accepting defendant's argument would mean that, if defendant routinely breached these safety deposit box rental agreements by handing the keys to anyone who came in off the street and asked for them, it would have no liability to its customers except to give them their rental fee back. It is safe to assume that, if defendant explained the agreement this way in the contract, defendant would not have many safety deposit box customers.

Defendant's response to *Sniffen* is twofold. First, defendant argues that it is distinguishable because it involved an exculpatory clause that conflicted with another provision of the contract, while the contract in the case before us contains no such conflict. This is clearly incorrect. The contract here contains the same conflict as the contract in *Sniffen*: a general exculpatory clause absolving the bank for all liability from any loss whatsoever, and an express obligation to prevent unauthorized opening of the box. Second, defendant argues that *Sniffen* was distinguished in *Federal Deposit Insurance Corp.*, 436 So. 2d 227 (Fla. App. 1983). Defendant is correct, but that does not help defendant. In *Carre*, the court agreed with *Sniffen* that a bank cannot exculpate itself from all liability to its safety deposit box customers.

*Carre* upheld a partial exculpatory clause that limited the bank's safety deposit box liability to instances of gross negligence, fraud, or bad faith. *Carre*, 436 So. 2d at 229-30. Here, defendant's exculpatory clause did not limit its liability to instances of gross negligence, fraud, or bad faith, as in *Carre*. Rather, as in *Sniffen*, it purported to absolve defendant from any liability whatsoever. Thus, we fail to see the relevance of *Carre* to this case.

Defendant further argues that the appellate court's decision undermined subrogation principles. Defendant points out that subrogation is an equitable remedy and cites *Bost v. Paulson's Enterprises, Inc.*, 36 Ill. App. 3d 135 (1976), for the proposition that subrogation is grounded on the principle that a debt should be paid by the entity who "in equity and good conscience" should pay that debt. Defendant then argues that it would be "highly inequitable" to allow Jewelers Mutual to escape its responsibility for the lost contents of the safety deposit boxes when it alone was paid to assume the risk of that loss. We disagree. Defendant's position, not Jewelers Mutual's, would undermine subrogation principles. What would be highly inequitable would be to allow defendant to escape all responsibility when the loss is alleged to be a direct result of defendant's breach of its contractual obligations. Annaco Corporation's and Ringel's policies with Jeweler's Mutual were not liability policies for defendant.

We hold that the exculpatory provision is not applicable to an allegation that defendant breached its duty to exercise ordinary care to prevent unauthorized access to the box. Our resolution of the issue in this manner renders unnecessary a discussion of whether the parties subjected themselves to the Landlord and Tenant Act by defining their relationship as landlord and tenant.

We affirm the appellate court's judgment reversing the summary judgment for defendant, entering summary

judgment for plaintiffs, and remanding for proof of damages.

*Affirmed.*